**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 21, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JAMES LYNN KIDWELL,

        Petitioner - Appellant,

v.

TERRY MARTIN, Warden,

        Respondent - Appellee.

No. 12-5042
(D.C. No. 4:08-CV-00596-CVE-FHM)
(N.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**<sup>*</sup>

Before **LUCERO**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

James L. Kidwell, an Oklahoma state prisoner proceeding pro se,[1] seeks a certificate of appealability ("COA") to challenge the district court's dismissal of his 28 U.S.C. § 2254 petition. We deny his request for a COA and dismiss this matter.

---

    **\***This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

    [1]Because Mr. Kidwell is proceeding pro se, we construe his pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[W]e must construe [a pro se litigant's] arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

# I. BACKGROUND

**A.** *Factual Background*

In February 2003, Mr. Kidwell began communicating with Rebecca Barney on a dating website. On February 21, 2003, Mr. Kidwell met Ms. Barney at a bar in Tulsa, Oklahoma. Shortly before 2 a.m. on February 22, 2003, Mr. Kidwell accompanied Ms. Barney back to her home, which Ms. Barney shared with her ex-husband, Fred Barney.

At 3:10 a.m.—less than 90 minutes after Mr. Kidwell and Ms. Barney left the bar—the Tulsa fire department received a 911 call reporting a fire at the Barneys' residence. The caller who reported the fire identified himself as Kenneth Maxwell. While the dispatcher spoke to Mr. Maxwell, he heard another man's voice in the background. Immediately after the dispatcher heard the voice, the telephone call terminated.

At 3:14 a.m., firefighters arrived at the Barneys' residence. The firefighters saw a man—later identified as Mr. Maxwell, the 911 caller—in a vehicle blocking the road in front of the Barneys' home. The firefighters assumed Mr. Maxwell was asleep and attempted to wake him up, but they discovered that Mr. Maxwell had been shot in the back of his head.

After entering the Barneys' home, firefighters discovered that someone had started a fire in the kitchen by pulling a gas line out of the wall and setting the line on fire.

The firemen then found Mr. Barney, who had been fatally shot, lying on the floor in a pool of blood. They also found Ms. Barney, who had been critically injured from a gunshot wound to the head, lying naked on her bed.

Emergency personnel took Ms. Barney and Mr. Maxwell to the hospital. Both died a short time later without ever regaining consciousness.

During their investigation of the scene, the police found no signs of forced entry but discovered that a computer tower was missing. Next to where the computer tower had been, police recovered a computer-printed photograph of Mr. Kidwell.

**B.** *Procedural Background*

Following an investigation by multiple law enforcement agencies, Mr. Kidwell was arrested and charged with three counts of first-degree murder. Mr. Kidwell pled not guilty to the charges and requested a jury trial.

Mr. Kidwell's trial began on November 23, 2004. During its case-in-chief, the prosecution presented evidence that: (1) Mr. Kidwell admitted to police that he went to the Barneys' home between 1:45 and 2:00 a.m. on February 23, 2003; (2) firefighters discovered the Barneys and Mr. Maxwell less than two hours after Mr. Kidwell was last seen with Ms. Barney; (3) DNA extracted from semen collected from Ms. Barney's body matched Mr. Kidwell's DNA; (4) DNA samples collected from a sweatshirt at Mr. Kidwell's home and from the gearshift knob of Mr. Kidwell's vehicle matched Ms. Barney; (5) Mr. Kidwell's photo was found next to where the missing computer had been; (6) Mr. Kidwell placed Ms. Barney on a "block list" on the dating website where he

3

met her; and (7) information relating to Ms. Barney had been deleted from Mr. Kidwell's computer.

The prosecution also presented testimony from Jack Harris, a jailhouse informant. Mr. Harris stated that Mr. Kidwell had told him he was worried about the voice heard in the background during Mr. Maxwell's 911 call. Mr. Harris testified: "'[Mr. Kidwell asked] do you think the FBI has the technology available to enhance it and get a voice print off of it? And I said I think so. [Mr. Kidwell responded] then I think I'm fucked.'" ROA at 39 (quoting Tr. Trans. Vol. IX, at 45).

On December 2, 2004, a jury found Mr. Kidwell guilty on all three counts of first-degree murder. On December 15, 2004, the state trial court sentenced Mr. Kidwell to life imprisonment without the possibility of parole on each of the three counts, to run consecutively.

Mr. Kidwell appealed his conviction to the Oklahoma Court of Criminal Appeals ("OCCA"). On February 26, 2007, the OCCA issued an unpublished opinion affirming Mr. Kidwell's conviction.

On May 20, 2008, Mr. Kidwell filed his first application for state post-conviction relief, which the OCCA denied. On July 9, 2009, Mr. Kidwell filed a second application for state post-conviction relief, which the OCCA also denied.

On April 13, 2010, Mr. Kidwell filed a pro se petition for writ of habeas corpus in the United States District Court for the Northern District of Oklahoma pursuant to 28 U.S.C. § 2254. On March 5, 2012, the federal district court issued an order rejecting all of Mr. Kidwell's claims and denying his § 2254 petition.

Mr. Kidwell filed a timely notice of appeal and a request for a COA seeking to challenge the district court's denial of his § 2254 petition.

## II. DISCUSSION

A COA is a jurisdictional prerequisite to this court's review of a § 2254 petition. 28 U.S.C. § 2253(c)(1)(A); *accord Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). To receive a COA, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, an applicant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted).

In his application for a COA, Mr. Kidwell asserts five claims of error. First, he contends that the federal district court erred in rejecting his claims of ineffective assistance of appellate counsel. Second, he argues that the federal district court erred in rejecting his claim that the evidence introduced during his trial was insufficient to support his convictions. Third, he contends that the federal district court erred in rejecting his claim that jury instructions given during his trial violated his right to due process. Fourth, he argues that the federal district court erred in rejecting his claims that his rights under the Fourth Amendment were violated during his arrest and trial. Finally, Mr. Kidwell contends that the district court erred in rejecting his claim of cumulative error.

We address each of Mr. Kidwell's arguments in turn.

**A. *Ineffective Assistance of Appellate Counsel***

5

To establish a claim of ineffective assistance of counsel, a petitioner must show both (1) constitutionally deficient performance and (2) resulting prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, we focus on the merits of the omitted claims to determine whether the petitioner has satisfied both of *Strickland*'s elements. *See Cargle v. Mullin,* 317 F.3d 1196, 1202 (10th Cir. 2003).

If the omitted issue is without merit, appellate counsel's failure to raise it is not ineffective assistance of counsel. *See id.* Thus, to satisfy *Strickland*'s deficient performance element, a habeas petitioner "must . . . show that his [appellate] counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith v. Robbins,* 528 U.S. 259, 285 (2000) (citations omitted). To satisfy *Strickland*'s prejudice element, a petitioner must establish "a reasonable probability that, but for his counsel's unreasonable failure to [raise an issue], he would have prevailed on his appeal." *Id.*

In his § 2254 petition, Mr. Kidwell alleged that his direct appeal counsel was ineffective for failing to raise several claims of ineffective assistance of trial counsel. In relevant part, Mr. Kidwell argued that his direct appeal counsel should have argued that trial counsel failed to hire a computer analyst and that trial counsel improperly persuaded him not to testify during his trial. The federal district court noted that Mr. Kidwell had asserted these ineffective assistance of counsel claims in his first petition for state post-

6

conviction relief and that the OCCA had rejected the claims. But it determined that the standard the OCCA had applied to Mr. Kidwell's claims "deviate[d] from the controlling federal standard." *Kidwell v. Martin*, No. 08-CV-0596-CVE-FHM, 2012 U.S. Dist. LEXIS 28465, at *21 (N.D. Okla. Mar. 5, 2012). It therefore concluded that the OCCA's analysis of Mr. Kidwell's claims of ineffective assistance of appellate counsel was not entitled to deference under the Antiterrorism and Effective Death Penalty Act. *See id* at *22; *see also Cargle*, 317 F.3d at 1205 ("Because the OCCA's analysis of petitioner's appellate ineffectiveness allegations deviated from the controlling federal standard, . . . it is not entitled to deference." (quotations omitted)). After reviewing Mr. Kidwell's claims de novo, the district court held that his claims were meritless.

In his application for a COA, Mr. Kidwell contends that the district court erred in rejecting his claims of ineffective assistance of appellate counsel. For the reasons discussed below, we conclude that reasonable jurists could not debate the district court's conclusion that Mr. Kidwell's claims lack merit.

### 1. *Failure to Hire a Computer Analyst*

During Mr. Kidwell's trial, the State introduced evidence that Mr. Kidwell had placed Ms. Barney on a "block list" on the dating website where he met Ms. Barney. In his § 2254 petition, Mr. Kidwell argued that his direct appeal counsel was ineffective because he did not argue that trial counsel provided ineffective assistance by failing to hire a computer analyst. Mr. Kidwell suggested that the computer analyst "could have better explained the computer-related evidence from the defense's point of view." *Kidwell*, 2012 U.S. Dist. Lexis 28465, at *25 (quotations omitted).

7

The federal district court rejected this claim, stating: "[Mr. Kidwell] has failed to satisfy the prejudice prong of the *Strickland* standard. [He] has not convinced the [c]ourt that testimony from a computer analyst regarding common practices of persons utilizing Internet dating sites would have resulted in a different outcome at trial." *Id.* at *26.

In his application for a COA, Mr. Kidwell contends that the district court erred in concluding that he failed to establish prejudice. In a single sentence in his brief, Mr. Kidwell argues that "counsel's deficiencies resulted in an outcome different than that which would have been reached had counsel acted in accordance with the prevailing professional norms." Aplt. Br. at 10. We have repeatedly stated that such conclusory allegations do not satisfy *Strickland*'s prejudice element. *See, e.g.*, *Stafford v. Saffle*, 34 F.3d 1557, 1564-65 (10th Cir. 1994) (stating that vague and conclusory evidence is insufficient to satisfy the prejudice prong of *Strickland*); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even pro se plaintiffs must allege sufficient facts on which a recognized legal claim can be based and that conclusory allegations will not suffice).

Because Mr. Kidwell has not offered analysis suggesting that direct appeal counsel's alleged deficiency resulted in prejudice, he has failed to demonstrate that reasonable jurists would debate the correctness of the district court's rejection of this claim. We therefore hold that Mr. Kidwell is not entitled to a COA on this claim.

### 2. *Improper Advice Dissuading Mr. Kidwell from Testifying*

In his § 2254 petition, Mr. Kidwell argued that his direct appeal counsel failed to argue that his trial counsel provided ineffective assistance by improperly coercing him

not to testify at trial. The federal district court rejected this claim. It noted that during trial, Mr. Kidwell stated that his lawyers were not forcing him not to testify and that it was his free and voluntary choice not to testify. The district court concluded that Mr. Kidwell's statements contradicted his assertion that his trial counsel coerced him not to testify and that Mr. Kidwell had "failed to overcome the strong presumption that his declarations to the trial court regarding his decision not to testify were truthful." *Kidwell*, 2012 U.S. Dist. Lexis 28465, at \*30. The district court therefore held that Mr. Kidwell had not demonstrated that his appellate counsel was ineffective for failing to assert this claim on direct appeal.

In his application for a COA, Mr. Kidwell contends that the district court erred in rejecting his claim. But as the district court noted, during Mr. Kidwell's trial, Mr. Kidwell stated that he had freely and voluntarily decided not to testify. The Supreme Court has emphasized that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). And Mr. Kidwell has failed to rebut the presumption that his statements at trial were truthful. We therefore conclude that reasonable jurists could not debate the correctness of the district court's rejection of this claim and deny Mr. Kidwell's request for a COA on this claim.

**B.** *Sufficiency of the Evidence*

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court explained that evidence is sufficient to affirm a conviction on appeal if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.

9

On direct appeal, Mr. Kidwell argued that the State failed to present sufficient evidence at trial to support his convictions for first-degree murder.[2]  After "[r]eviewing the evidence [presented during Mr. Kidwell's trial] in the light most favorable to the State," the OCCA concluded that "any rational trier of fact could [have found] the elements of the charged offenses beyond a reasonable doubt."  *Kidwell v. Oklahoma*, No. F-2004-1267, slip op. at 9 (Okla. Crim. App. Feb. 26, 2007).  The OCCA therefore rejected Mr. Kidwell's claim of insufficient evidence.

In his § 2254 petition, Mr. Kidwell argued that the OCCA erred in denying his claim.  The federal district court rejected Mr. Kidwell's argument.

In his application for a COA, Mr. Kidwell argues that the OCCA and the federal district court erred in rejecting his insufficiency of the evidence claim.  Mr. Kidwell concedes that he was with Ms. Barney on the day she was murdered, that his DNA was found inside Ms. Barney's body, and that Ms. Barney's DNA was found on his sweatshirt and on the gearshift knob of his vehicle.  But he argues "[t]hese facts do not point to evidence of guilt for the three homicides."  Aplt. Br. at 11.  Rather, he contends that this evidence proves only that he and Ms. Barney had sexual intercourse the morning that Ms. Barney was murdered.

---

[2]Under Oklahoma law, first-degree murder is defined as unlawfully killing another person with malice aforethought.  *See* Okla. Stat. tit. 21, § 701.7.  "[P]remeditated design sufficient to establish malice aforethought may be inferred from the fact of killing alone, unless the facts and circumstances raise a reasonable doubt as to whether such design existed."  *Hancock v. State*, 155 P.3d 796, 812 (Okla. Crim. App. 2007).

10

We agree with Mr. Kidwell that the DNA evidence does not directly prove that he murdered the Barneys and Mr. Maxwell. But during Mr. Kidwell's trial, the State presented additional evidence, including Mr. Harris's testimony regarding Mr. Kidwell's concern that the FBI could identify the voice of the man heard in the background during Mr. Maxwell's 911 call.

Affording proper deference to the OCCA, *see Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (per curiam), and viewing the evidence presented during Mr. Kidwell's trial in the light most favorable to the State, we cannot say that that no rational trier of fact could have found the essential elements of Mr. Kidwell's offense of conviction to be proven beyond a reasonable doubt, *see Jackson*, 443 U.S. at 319. We hold that reasonable jurists could not debate the federal district court's rejection of Mr. Kidwell's claim of insufficient evidence and deny Mr. Kidwell's request for a COA on this claim.

## C. *The Jury Instruction*

During Mr. Kidwell's trial, his defense counsel asked the court to give a jury instruction defining the "beyond a reasonable doubt" standard as evidence sufficient to exclude every reasonable hypothesis other than guilt. The trial court denied the request and instructed the jury as follows:

> The State relies in part for a conviction upon circumstantial evidence. In order to warrant conviction of a crime upon circumstantial evidence, each fact necessary to prove the guilt of the defendant must be established by the evidence *beyond a reasonable doubt*. All of the facts and circumstances, taken together, must establish to your satisfaction the guilt of the defendant *beyond a reasonable doubt*.

ROA at 47 (emphases added).

11

On direct appeal, Mr. Kidwell argued that the trial court had erred in failing to give the jury the instruction he requested. The OCCA rejected Mr. Kidwell's claim.

In his § 2254 petition, Mr. Kidwell argued that the OCCA erred in denying his claim that the omission of the requested jury instruction violated his right to due process. To support this assertion, Mr. Kidwell contended that the OCCA's rejection of his claim on direct appeal was contrary to the Supreme Court's decision in *Holland v. United States*, 348 U.S. 121, 140 (1954).

In *Holland*, the Supreme Court rejected the petitioner's argument that where the government's evidence is circumstantial, trial judges must instruct the jury that the circumstantial evidence "must be such as to exclude every reasonable hypothesis other than that of guilt." *Id.* at 139. The Court stated that "where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect." *Id.* at 139-40.

Relying on *Holland*, Mr. Kidwell acknowledged that when "a proper reasonable doubt instruction is given, a jury need not be instructed that circumstantial evidence must be so strong as to exclude every reasonable hypothesis other than guilt." Aplt. Br. at 12-13. But he argued that the instruction given during his trial was not a proper reasonable doubt instruction because it did not define reasonable doubt. He further argued that it is necessary "to define 'reasonable doubt' to the jury . . . if the jury is not instructed that circumstantial evidence must be so strong as to exclude every reasonable hypothesis other than guilt." *Id.* at 13. The federal district court rejected this argument.

12

In his application for a COA, Mr. Kidwell argues that the district court erred in rejecting his claim that his right to due process was violated by the district court's failure to give his requested jury instruction. We reject this argument.

We recognize that "the reasonable-doubt standard plays a vital role in the American scheme of criminal procedure." *In re Winship*, 397 U.S. 358, 363 (1970). But the Supreme Court has made clear that "[t]he Constitution neither prohibits trial courts from defining reasonable doubt *nor requires them to do so* as a matter of course." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (emphasis added). "[S]o long as the [trial] court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Id.* (citation omitted).

Here, the trial court specifically instructed the jury that it had to find that the circumstantial evidence presented by the State proved Mr. Kidwell guilty beyond a reasonable doubt. And the instruction given by the trial court "was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some." *Holland*, 348 U.S. at 140. Accordingly, Mr. Kidwell has failed to demonstrate that reasonable jurists would debate the correctness of the district court's denial of his jury instruction claim. We therefore hold that Mr. Kidwell is not entitled to a COA on this claim.

**D.** *Fourth Amendment Claims*

On direct appeal, Mr. Kidwell asserted several Fourth Amendment claims, which the OCCA rejected. In his § 2254 petition, Mr. Kidwell challenged the OCCA's analysis.

13

The federal district court concluded that Mr. Kidwell's Fourth Amendment claims were barred from federal habeas review under *Stone v. Powell*, 428 U.S. 465 (1976).

In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. The opportunity for full and fair litigation "includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim," a "full and fair evidentiary hearing," and "at least colorable application of the correct Fourth Amendment constitutional standards." *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978).

In his application for a COA, Mr. Kidwell suggests that he did not have a full and fair opportunity to litigate his Fourth Amendment claims in state court. But the record in this case demonstrates that Mr. Kidwell asserted his Fourth Amendment claims in a pre-trial motion to suppress, during his trial, and on direct appeal. Mr. Kidwell has not demonstrated that these opportunities were unfair or that they were insufficient to fully litigate his Fourth Amendment claims. Accordingly, Mr. Kidwell has failed to establish that reasonable jurists would debate the correctness of the federal district court's conclusion that Mr. Kidwell's Fourth Amendment claims are barred from federal habeas review. We therefore deny Mr. Kidwell a COA on this issue.

### E. *Cumulative Error*

On direct appeal, Mr. Kidwell argued that cumulative error during his trial deprived him of his right to due process. The OCCA rejected his claim. In his § 2254

14

petition, Mr. Kidwell argued that the OCCA had erred in rejecting his claim of cumulative error. The federal district court rejected his argument. In his application for a COA, Mr. Kidwell contends that the federal district court erred in rejecting his claim of cumulative error.

"Cumulative-error analysis applies [only] where there are two or more [constitutional] errors. It does not apply . . . to the cumulative effect of non-errors." *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999) (quotations omitted).

Mr. Kidwell has failed to establish that any constitutional errors occurred during his trial. Accordingly, reasonable jurists could not debate the correctness of the district court's rejection of Mr. Kidwell's claim of cumulative error. *See United States v. Franklin-El*, 555 F.3d 1115, 1128 (10th Cir. 2009) (noting that a court must "refrain from engaging in a cumulative error analysis" where there are not at least two constitutional errors). We therefore deny Mr. Kidwell's request for a COA on this issue.

## III. CONCLUSION

Mr. Kidwell has failed to demonstrate that reasonable jurists would debate the correctness of the district court's denial of his § 2254 petition. We therefore deny Mr. Kidwell's application for a COA and dismiss this matter.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge

15