**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 17, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

GABRIEL G. QUINTANA,

    Petitioner - Appellant,

v.

JAMES MULHERON, Warden;
HECTOR H. BALDERAS, ATTORNEY
GENERAL FOR THE STATE OF NEW
MEXICO,

    Respondents - Appellees.

No. 19-2076
(D.C. No. 2:18-CV-00469-KG-GJF)
(D. N.M.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **LUCERO**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Gabriel Quintana, a New Mexico state prisoner proceeding pro se,[1] seeks a

certificate of appealability (COA) to challenge a district court order denying his

petition for a writ of habeas corpus under 28 U.S.C. § 2254. For the following

reasons, we deny Quintana's request for a COA and dismiss this matter.

---

[*] This order is not binding precedent, except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Quintana appears pro se, we liberally construe his pleadings,
stopping short of serving as his advocate. _See United States v. Pinson_, 584 F.3d 972,
975 (10th Cir. 2009).

## BACKGROUND

Because this matter comes to us as a petition for habeas relief under § 2254,
we assume that the factual findings of the New Mexico Supreme Court are correct.
*See Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012) (quoting § 2254(e)(1)).
The New Mexico Supreme Court summarized the underlying facts in this matter as
follows:

> Gabriel (Defendant) and Marisela Quintana were married in 2003.[2] In June
> 2005, Marisela left Defendant and moved in with her parents two miles away.
> In August of that year, Marisela obtained an order of protection barring
> Defendant from any contact with her or the couple's children. Defendant
> violated the order by physically confronting Marisela at her place of work,
> and, on September 4, by going to her parents' home in an attempt to remove
> the children.
>
> On the morning of September 5, 2005, Marisela left for work in her two-door
> Chevrolet Cavalier, accompanied by her mother Elisa Apodaca. As they
> approached the main highway, Defendant emerged from the bushes and
> stood in front of the car wearing black pants and a black jacket. He was angry
> and said he wanted to get back together with Marisela. Elisa told Defendant
> that Marisela did not want to be involved with him any longer. Marisela
> asked Defendant to move, but he persisted, ultimately opening the car door,
> entering the rear of the car, and attacking Marisela. He stabbed her in the leg,
> arms, back, breast and face. The wounds were not life threatening.
>
> When Defendant finally relented, Marisela locked the doors and started to
> drive to the highway to look for help. However, she noticed that Elisa was
> no longer in the vehicle, and as she drove away, Marisela observed Defendant
> in the driveway with his hand raised above Elisa. Marisela arrived at the
> home of her neighbors, who helped contact the police and paramedics.
> Elisa died at the scene, sustaining at least nine stab wounds, several of which
> penetrated deep within vital areas of her body cavity. She also suffered
> several defensive wounds. She died as a result of blood loss from a
> combination of the wounds, the most severe of which severed her aorta.

---

[2] Quintana asserts that they were married in 1994, not 2003. But the date is not
relevant to our analysis.

Approximately twelve hours after the attack, police received a tip from Defendant's brother, Carlos Heredia, stating that Defendant was at their parents' house changing clothes. Defendant was apprehended in the vicinity shortly thereafter wearing a blue T-shirt, dark sweat pants, and boots. His clothes were wet from the waist down, and appeared soiled and littered with stickers. There was no blood on Defendant's clothing at the time of his arrest. Whether these were the same clothes he wore at the time of the attack is a matter of some dispute, though the fact is not dispositive.

The police investigation revealed two additional sets of facts relevant to our consideration regarding Defendant's conduct between the time of the attack and his apprehension. First, another of Defendant's brothers, Librado Heredia, told investigators that Defendant had contacted him, admitting that he had stabbed Marisela and Elisa, and requesting money to go to San Diego. State Police Officer Lorenzo Aguirre testified at trial that Librado had reported the same to him when he arrived at the home of Defendants' parents on the morning of September 5.

Second, at about 7:00 a.m. on the day of the attack, a janitorial worker observed an occupied white Ford truck near the restrooms in a no-camping area at Abiquiu Dam. He observed the same truck in the same location the following day, and reported the vehicle to Ranger Phil Martinez. On Wednesday, two days after the attack, Ranger Martinez inspected the vehicle and discovered a receipt and a torn photograph of Defendant's family in a garbage bag in the bed of the truck. Ranger Martinez then contacted law enforcement, which later verified that the truck was registered to Defendant. They then obtained a warrant and searched the truck, finding nothing of significant evidentiary value.

*State v. Quintana*, No. 30,847, 2009 WL 6608347, at *1–2 (N.M. Oct. 19, 2009).

On May 2, 2007, a New Mexico jury convicted Quintana of first-degree murder of Elisa Apodaca; attempted second-degree murder of Marisela Quintana; aggravated battery against a household member, Marisela Quintana; tampering with evidence; and violating an order of protection. The New Mexico state district court sentenced Quintana to life imprisonment for first-degree murder, three years consecutive for attempted second-degree murder, three years consecutive for

tampering with evidence, three years concurrent for aggravated battery against a household member, and 364 days concurrent for violating an order of protection. The court further ordered that Quintana would be eligible for parole after having served thirty years of the life sentence plus the additional six years imposed consecutively.

On direct appeal, the New Mexico Supreme Court concluded that the underlying felony of aggravated battery against a household member violated the Double Jeopardy Clause and must be vacated. *Quintana*, 2009 WL 6608347, at *2. It further concluded that the conviction for tampering with evidence was supported by sufficient evidence and that Quintana's other arguments lacked merit. *Id.* at *5–10. On remand, the district court vacated the conviction for aggravated battery against a household member but left the sentence of life plus six years unchanged.

On November 19, 2009, Quintana filed a pro se petition for post-conviction relief in state court. A year later and now represented by court-appointed counsel, Quintana filed an amended petition for post-conviction relief in state court based on claims of ineffective assistance of trial counsel. His petition was accompanied by an affidavit of one of his trial attorneys, Cynthia Hill, attesting to the defense team's ineffectiveness. On May 31, 2011, the state district court granted Quintana's petition for ineffective assistance of trial counsel, vacated his convictions, and ordered a new trial—notably, the court did not rule on the merits of the petition, but entered judgment as a default ruling against the State for failing to timely respond and appear at a hearing as ordered. On June 24, 2011, the State filed a motion to reconsider. After a hearing on the matter and receiving an affidavit from Quintana's other trial

4

attorney, Damian Horne, contradicting the statements made by his co-counsel, the state district court denied the motion to reconsider. The State appealed, and the state district court stayed Quintana's new trial pending the decision of the New Mexico Supreme Court.

On March 23, 2013, the New Mexico Supreme Court held "that the conduct of the District Attorney and the Attorney General did not rise to the level of stubborn resistance to the district court's orders that would justify the extreme sanction of vacating Quintana's jury convictions without both considering a response from Respondents and after having had a full evidentiary hearing." *Quintana v. Bravo*, 2013-NMSC-011, ¶ 2, 299 P.3d 414, 415. The Court therefore reversed the district court's order and remanded for reassignment to a different judge with directions to hold "an evidentiary hearing on the merits of Quintana's petition because of the factual issues created by the competing affidavits of Quintana's trial counsel." *Id.* at ¶ 33, 299 P.3d at 421.

On remand, the State filed a response to Quintana's amended petition for state post-conviction relief and once again submitted the affidavit of Mr. Horne denying any ineffective assistance of counsel. Quintana also filed a motion seeking to add additional claims to the petition. After the State submitted a response to the proposed amendments and the state district court held a status hearing, the parties agreed to leave to the court's discretion which claims would be granted an evidentiary hearing.

Ultimately, the state district court summarily dismissed several of Quintana's claims but granted an evidentiary hearing to consider trial counsel's ineffectiveness

5

as related to "(1) failure to effectively impeach prosecution witnesses; (2) failure to investigate; (3) failure to retain expert witnesses; and (4) cumulative effect of counsel's errors." R. Vol. 2 at 465. The court further granted Quintana permission to explore the following allegations as they relate to trial counsel's claimed ineffectiveness: the victim's family involvement in drugs and debts owed to drug dealers; Quintana's purported desire to take the stand in his defense; an anonymous letter mailed to Quintana claiming to identify the actual perpetrator; error during jury selection; and counsel's neglect to seek a change of venue. After the hearing, the state district court denied Quintana post-conviction relief on the merits. Quintana sought a writ of certiorari, which the New Mexico Supreme Court denied on March 30, 2018.

On May 18, 2018, Quintana filed a pro se petition for a writ of habeas corpus under § 2254 in the District of New Mexico. In a thorough and well-reasoned report and recommendation, the federal magistrate judge recommended that the district court deny Quintana's habeas petition on the merits. After receiving objections from Quintana, the district court adopted in full the magistrate's proposed findings and recommended disposition and therefore denied Quintana's § 2254 petition. On limited remand, the district court also entered an order denying Quintana a COA.

Quintana renews his request for a COA and argues that the district court erred in denying his petition. In his Combined Opening Brief and COA Application, Quintana raises the following arguments, all of which speak only to his claim of ineffective assistance of trial counsel: (1) counsel's failure to reconstruct the crime

6

scene for the jury; (2) counsel failed to test the blood on three knives found in the victim's car; and (3) counsel did not call the victim's or Quintana's family members as witnesses and failed to effectively cross examine or question those who were called.

## DISCUSSION

Under 28 U.S.C. § 2253(c)(1)(A), Quintana may appeal the district court's decision only if we issue a COA. To be entitled to a COA, he is required to make "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To do so, he must "show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation, brackets, and internal quotation marks omitted). Further, because the state court adjudicated the merits of Quintana's claims, he is entitled to habeas relief only if the state court's decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Quintana has not satisfied this burden.

### A. Crime-Scene Reconstruction

First, Quintana claims that he received constitutionally ineffective assistance of trial counsel based on counsel's failure to reconstruct the crime scene for the jury. But Quintana failed to raise this argument in his § 2254 petition to the district court,

7

so we will not consider it. *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1240 (10th Cir. 2005) (declining to address issues raised for the first time on appeal).

### B. Knives in the Victim's Car

Second, Quintana contends that the district court erred in not granting him habeas relief based on the alleged failure to investigate knives found in the victim's car. He asserts that "[t]he error is that the police gave them back [to the victim's family] . . . because the victim's family members say they use them regularly for killing pigs," but the "knives should have been confiscated and tested for analysis of blood of both victims and others." Appellant's Combined Opening Br. & COA Application at 8. Though Quintana's argument concerning these knives is not entirely clear, we liberally construe it to be an ineffective-assistance-of-counsel claim based on counsel's purported failure to investigate by testing the knives or to moving to have the prosecution test them. No reasonable jurist could disagree with the district court's ruling that Quintana is not entitled to habeas relief on such a claim.

As the federal magistrate judge correctly noted, the state district court summarily denied and dismissed Quintana's claim regarding the knives in the victim's car because Quintana offered "only vague allegations without any support to the record of the case or to evidence outside the record" and "failed to cite to any constitutional violation that might have occurred." R. Vol. 2 at 464–65. Because the deference we extend to state-court rulings under § "2254(d) applies even where there has been a summary denial," Quintana may succeed on his claim only if he can show "there was no reasonable basis" for the state court's decision. *Cullen v. Pinholster*,

8

563 U.S. 170, 187 (2011) (citation omitted). To assess the availability of habeas relief on a summary dismissal, "a habeas court must determine what arguments or theories . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Having assessed Quintana's § 2254 petition, his arguments to this court, his petition for state post-conviction relief, and the state district court's order, we conclude that reasonable jurists could not debate the correctness of the district court's denial of habeas relief on this ground. As the state district court noted, Quintana's allegations are conclusory and vague. And to the extent Quintana is making a claim regarding ineffective assistance of counsel for failure to investigate the knives, his claim fails even under the most liberal of constructions. We have repeatedly held that conclusory allegations are insufficient to warrant habeas relief for ineffective assistance of counsel. *See Johnson v. Raemisch*, __ F. App'x __, No. 19-1044, 2019 WL 2514189, at *6 (10th Cir. June 18, 2019) ("Vague, speculative, and conclusory allegations will not satisfy an applicant's burden under *Strickland*'s prejudice prong." (citing *Stafford v. Saffle*, 34 F.3d 1557, 1564 (10th Cir. 1994))); *Kidwell v. Martin*, 480 F. App'x 929, 934 (10th Cir. 2012) ("We have repeatedly stated that such conclusory allegations do not satisfy *Strickland*'s prejudice element." (citations omitted)).

9

**C. The District Court Did Not Err in Denying Relief Based on Counsel's Failure to Call or Cross-Examine Certain Family Members**

Third, Quintana argues that the district court erred in denying his habeas petition based on trial counsel's failure to question the victim's and his family members. Although Quintana does not specifically identify what he hoped would be uncovered by questioning or cross-examining family members in his Combined Opening Brief and COA Application, we assume he is referring to the alleged connections between the victims and drug cartels that he mentions in other places in his brief. There is also no room to question the correctness of the district court's ruling in this regard.

The state district court heard arguments from both defense counsel and the State regarding the alleged ineffectiveness of trial counsel for failing to question witnesses about the victims' involvement in drug trafficking during the evidentiary hearing. Based on the arguments and evidence presented, the state district court then denied relief on the merits. Specifically, the court offered the following analysis:

> Petitioner's assertions regarding the alleged drug ties to the victims' family fail to establish prejudice. Even if . . . Marisela Quintana was questioned concerning the family drug ties, it is not clear what her testimony would have been. Marisela Quintana could have denied any illegal drug involvement, and the defense had no evidence to impeach her concerning such a statement. And, although Ms. Hill did not believe the drug angle was effectively investigated, no evidence was produced at the time of trial to support the victims' family's involvement in illegal drugs, nor has any evidence come to light in the habeas proceedings to support such a claim. . . . It is not enough to make a claim; it must be supported by evidence in order to prove that claim.

R. Vol. 2 at 494.

10

As the federal magistrate judge noted, the state district court's analysis on this point is entitled to our deference on federal habeas review. And even if we were not extending deference, we discern no error in the state district court's ultimate conclusion. Quintana failed to offer any evidence that would suggest a "reasonable probability that . . . the result of the proceeding would have been different" had the family members been questioned about alleged drug ties. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). As such, the state district court properly denied post-conviction relief for ineffective assistance of counsel on this ground, and the federal district court correctly followed suit. In his appellate materials, Quintana has also failed to raise any evidence or make any argument that would offer a reason for reasonable jurists to question the correctness of courts' conclusions. Quintana is therefore not entitled to federal habeas relief on this ground.

## CONCLUSION

For the foregoing reasons, we conclude that jurists of reason could not debate the correctness of the district court's decision to deny Quintana's habeas petition. Accordingly, we DENY Quintana's request for a COA and DISMISS this matter.

We further grant Quintana's motion to proceed on appeal *in forma pauperis*. For Quintana's benefit, we note that 28 U.S.C. § 1915 does not allow litigants to avoid payment of filing and docketing fees—only the *prepayment* of those fees. He is

11

still required to pay the full amount of the filing fee in this matter. *See* § 1915(b).

Entered for the Court


Gregory A. Phillips
Circuit Judge