FILED
United States Court of Appeals
Tenth Circuit

January 14, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAMES W. GRIFFIN,

    Petitioner - Appellant,

v.

DAN SCNURR; DEREK SCHMIDT,

    Respondents - Appellees.

No. 14-3208
(D.C. No. 5:12-CV-03146-SAC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **SEYMOUR**, and **MATHESON**, Circuit Judges.
_____

In his petition for panel rehearing, James Griffin points out for the first time that he raised a due process issue in his initial pro se appeal brief for state post-conviction relief. We grant the petition only to the extent this amended order and judgment differs from the original one filed on December 10, 2015.

## I. **INTRODUCTION**

Mr. Griffin and Maurice Franklin's attempt to rob a restaurant in Kansas did not go as planned. Mr. Franklin shot the restaurant manager while holding him at gunpoint and fled without completing the robbery. Mr. Griffin waited in the car as the getaway

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

driver. He was charged and convicted in state court of attempted second-degree intentional murder, attempted aggravated robbery, and conspiracy to commit aggravated robbery.

On appeal, Mr. Griffin argued the jury instructions and the prosecutor's comments at trial allowed the jury to convict him for attempted second-degree murder without finding specific intent, contrary to Kansas law. The state courts denied his direct appeal and his requests for post-conviction relief. He sought habeas relief under 28 U.S.C. § 2254. The federal district court denied his petition and granted a certificate to appeal here.

Mr. Griffin appeals from the district court's denial of his petition for habeas corpus. To succeed on such a petition, he must show "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). He argued in the district court, and he argues here, that his right to due process under the Fourteenth Amendment was violated because the state trial court instructed the jurors that they could convict him of attempted second-degree murder without proof that he specifically intended to commit that crime.

Although Mr. Griffin asserted a cursory due process argument in his brief to the Kansas Court of Appeals ("KCA") during his first attempt at post-conviction relief, the KCA did not address it, and the record submitted to this court did not include his petition to the Kansas Supreme Court ("KSC") seeking review of the KCA's affirmance of the state district court's denial of such relief. After receiving the petition for rehearing, we asked Mr. Griffin to supplement the record with the petition to the KSC. Having

received and reviewed that document, we cannot determine that Mr. Griffin presented his due process claim to the KSC. We affirm because Mr. Griffin has not met his burden of showing he exhausted his claim, and even assuming he did exhaust, the claim cannot withstand AEDPA review on the merits.

Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(c), we affirm the district court's denial of Mr. Griffin's § 2254 petition.

## II. BACKGROUND

### A. *Factual History*

In 2002, Mr. Griffin and Mr. Franklin attempted to rob a restaurant in Topeka, Kansas. Mr. Griffin drove and waited in the car while Mr. Franklin tried to rob the restaurant at gunpoint. Mr. Franklin approached, threatened, and shot the restaurant manager, then fled without obtaining any money.

### B. *Procedural History*

#### 1. Trial

Mr. Griffin was charged with attempted second-degree intentional murder, attempted aggravated robbery, and conspiracy to commit aggravated robbery. At trial, the jury received the following instructions:

JURY INSTRUCTION NO. 7
A person who, either before or during the commission, intentionally aids, abets, advises, hires, counsels or procures another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the Defendant's participation, if any, in the actual commission of the crime.

JURY INSTRUCTION NO. 8

A person who intentionally aids, abets, advises, hires, counsels or procures another to commit a crime is also responsible for any other crime committed in carrying out or attempting to carry out the intended crime, if the other crime was reasonably foreseeable.

App. Vol. I at 39-40.

The jury also received the following instruction on the elements of attempted second-degree murder:

JURY INSTRUCTION NO. 9

In count 1 of the complaint, the Defendant, James W. Griffin is charged with the crime of Attempt to Commit Murder in the Second Degree. The Defendant pleads not guilty.

To establish this charge, each of the following claims must be proved:
1. That the Defendant, James W. Griffin performed an overt act toward the commission of the crime of murder in the second degree;
2. That the Defendant, James W. Griffin did so *with the intent to commit the crime of murder in the second degree*.
3. That the Defendant, James W. Griffin failed to complete the commission of the crime of murder in the second degree; and
4. That this act occurred on or about the 24th day of January, 2002, in Shawnee County, Kansas.

*Id.* at 41 (emphasis added).

Mr. Griffin was convicted of all three counts and was sentenced to 296 months in prison. He challenges only the attempted second-degree murder conviction in these habeas proceedings.

## 2. **Direct Appeal**

### a. *Kansas Court of Appeals*

On appeal to the KCA, Mr. Griffin asserted ten claims. Two are relevant to this appeal.

<u>First</u>, Mr. Griffin asserted prosecutorial misconduct based on the prosecutor's (a) repeated statements, largely during closing argument, that once Mr. Griffin aided and abetted the robbery, he was "in for a penny, in for a pound" on the attempted second-degree murder, and (b) arguing facts not in evidence.

<u>Second</u>, Mr. Griffin argued the government presented insufficient evidence of his intent to commit attempted second-degree murder. The substance of the argument, however, is more clearly understood as a challenge to the jury instructions. He contended the jury instructions allowed the jury to convict him of attempted second-degree murder based on his aiding and abetting the robbery. The jury should have been allowed, he said, to convict only if it found Mr. Griffin willfully and purposefully aided and abetted Mr. Franklin's attempted second-degree murder.

Mr. Griffin's prosecutorial misconduct and insufficient evidence claims challenged the proof that should be required for second-degree murder. Both claims depended on second-degree murder constituting a specific intent crime that cannot be established by reasonable foreseeability.

The KCA rejected each of Mr. Griffin's claims and affirmed his conviction and sentence. It concluded Mr. Griffin and Mr. Franklin were equally culpable under Kansas aiding and abetting law because the attempted second degree murder was a reasonably foreseeable consequence of the aggravated robbery.

b. *Kansas Supreme Court*

Mr. Griffin petitioned for the KSC's review of his direct appeal. Among the issues raised, he presented the following: "Did the prosecutor engage in prosecutorial

- 5 -

misconduct when he repeatedly referred to [Mr. Griffin]'s guilt in terms of 'in for a penny in for a pound' and argued to the jury facts not in evidence?" Pet. for Review at 5. Mr. Griffin asserted his prosecutorial misconduct arguments, expanded his challenge to the jury instructions about intent for second-degree murder, and argued the Government presented insufficient evidence to prove he intended to commit second-degree murder.

The KSC denied review.

3. **Post-Conviction Petitions in Kansas Courts**

Mr. Griffin pursued state post-conviction relief three times, to no avail.

First, in 2008 he moved pro se[1] for post-conviction relief under Kan. Stat. Ann. § 60-1507.[2] The motion submitted to the state district court did not allege a due process claim. According to the KCA, he claimed (1) his trial counsel was ineffective because he failed to move for dismissal of the attempted second-degree murder charge, and (2) the trial court erred because it failed to instruct the jury on a lesser included offense. In his petition for rehearing to this court, Mr. Griffin points out that he argued in his brief to the KCA that he was convicted in violation of due process because the state was not required to prove specific intent, as required by *State v. Overstreet*, 200 P.3d 427 (Kan. 2009)

---

[1] Although we liberally construe pro se filings, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), we may not "assume the role of advocate," *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (quotations omitted); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009), and we do not "fashion . . . arguments for him," *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

[2] Prisoners in Kansas can collaterally attack their sentences under Kan. Stat. Ann. § 60-1507, which allows prisoners to "move the court which imposed the[ir] sentence to vacate, set aside or correct the sentence."

("*Overstreet II*").[3]  The KCA did not mention this issue in its decision.  The state district court denied relief, the KCA affirmed, and the KSC declined further review.  *Griffin v. State*, 225 P.3d 1212, 2010 WL 923145, at \*2 (Kan. Ct. App. Mar. 12, 2010) (table decision) (unpublished).  Even now, Mr. Griffin does not contend his due process claim was presented to the state district court or to the KSC.

We have reviewed Mr. Griffin's recent supplement to the record consisting of his petition to the KSC for review of the KCA's affirmance of the denial of his request for post-conviction review.  His petition addressed his claims that (1) his counsel failed to object to the complaint and (2) the trial court failed to give a lesser-included-offense instruction to the jury on aggravated battery.  Nowhere in the petition did Mr. Griffin present the due process argument he makes here.

Mr. Griffin also submitted to the KSC two letters presenting supplemental authority consisting of 27 single-spaced pages.  Although the first letter referred to and quoted from *Overstreet* and described the verdict as "constitutionally infirm," Doc. 01019549671 at 40, it did not contain the due process argument Mr. Griffin attempts to present here.  The second letter did not mention *Overstreet* or due process.  Moreover, Mr. Griffin stated that the KSC disallowed the letters under Kansas Supreme Court Rule 6.09(b).  App. Vol. 1 at 32-33.  The record, even as supplemented, therefore does not

---

[3] *Overstreet II* reversed the KCA's decision in *State v. Overstreet*, 175 P.3d 883, 2008 WL 360642 (Kan. Ct. App. Feb. 8, 2008) (table decision) (unpublished) ("*Overstreet I*"), which we discuss below.

establish that Mr. Griffin presented his due process claim for one full round of review on his first attempt for post-conviction relief.

Second, Mr. Griffin moved in 2010 for post-conviction relief under Kan. Stat. Ann. § 60-260(b)(6),[4] arguing the jury instructions violated due process under the Fourteenth Amendment by lowering the Government's burden to prove specific intent. Mr. Griffin relied on *Overstreet II* and *State v. Engelhardt*, 119 P.3d 1148 (Kan. 2005), to argue the jury instructions erroneously allowed the jury to convict him of second-degree murder without proving the requisite specific intent. The state district court explained post-conviction relief is unavailable under § 60-260(b)(6), construed Mr. Griffin's filing as his second § 60-1507 motion, and denied it as successive. Mr. Griffin did not appeal the denial.

Third, Mr. Griffin filed a § 60-1507 motion for post-conviction relief in 2011, claiming ineffective assistance of appellate counsel for abandoning several issues when seeking review by the KSC on direct appeal. The state district court summarily denied relief. The KCA affirmed, concluding the motion was successive and untimely, and in any event, Mr. Griffin failed to demonstrate his counsel had performed deficiently.

4. **Federal Habeas Corpus Petition**

Mr. Griffin filed a 28 U.S.C. § 2254 petition in federal court, arguing his conviction for attempted second-degree murder violated due process because the jury

---

[4] Under Kan. Stat. Ann. § 60-260(b)(6), Kansas state courts may grant relief from a final judgment for "any . . . reason that justifies relief."

instructions allowed the conviction without proof of the requisite specific intent required by Kansas law. The district court reviewed the direct appeal filings Mr. Griffin had submitted to the KCA and KSC and concluded he had exhausted his due process claim.

The district court nonetheless denied his petition on the merits. It concluded the improper jury instructions did not violate due process because they "did not *omit* the element of intent, but merely permitted the jury to *infer or derive* [Mr. Griffin]'s intent to kill from his willing participation in the robbery and the reasonabl[e] foreseeability of the murder." App. Vol. III at 194. The district court granted a certificate of appealability. Mr. Griffin now appeals.

## III. DISCUSSION

We affirm the district court's denial of habeas relief. On the record before this court, Mr. Griffin has not shown that he fairly presented his due process claim to the KSC in his direct appeal or his attempts at post-conviction review.[5] If he did not present the claim to the KSC, he failed to exhaust it in state court and it is procedurally defaulted. And even assuming he did present the claim to the KSC, we affirm denial of the claim on the merits.

---

[5] Mr. Griffin argues the State waived its exhaustion defense. We disagree. The State raised the defense in the district court, App. Vol. II at 77-78, and on appeal the State's brief again references Mr. Griffin's failure to present his due process claim to the state courts, Aplee. Br. at 8-9. We may rely on procedural default even when the State did not separately appeal an adverse procedural default determination, *Romano v. Gibson*, 239 F.3d 1156, 1169 (10th Cir. 2001), and we may affirm on any ground supported by the record, *see United States v. Damato*, 672 F.3d 832, 844 (10th Cir. 2012).

## A. *Standard of Review*

We review a federal district court's legal analysis of a § 2254 petition de novo, *Frost v. Pryor*, 749 F.3d 1212, 1223-24 (10th Cir. 2014), including its determination that claims were exhausted in state court, *see Allen v. Zavaras*, 568 F.3d 1197, 1200 n.4 (10th Cir. 2009).

## B. *Exhaustion*

### 1. **Legal Background on Exhaustion, Procedural Default, and Cause and Prejudice or Miscarriage of Justice**

A state prisoner may not obtain federal habeas relief unless the petitioner "has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A). Four aspects of the exhaustion requirement are relevant to this appeal.

First, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To do so, the prisoner must seek discretionary review on the constitutional issue he wishes to pursue under § 2254 in the state's highest court—here, the KSC—so long as that is a "normal, simple, and established part of the State's appellate review process."  *Id.*

Second, "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotations omitted).  The prisoner is not required to cite "'book and verse on the federal constitution.'"  *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (quoting

- 10 -

*Picard v. Connor*, 404 U.S. 270, 278 (1971)).  "[T]he crucial inquiry is whether the 'substance' of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim."  *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (quotations omitted).

Third, procedural default may arise from anticipatory procedural bar.  "Generally, a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies.  However, 'if the court to which Petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review.'"  *Bland*, 459 F.3d at 1012 (citations omitted).

Fourth, "we do not 'address issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.'"  *Cummings v. Sirmons*, 506 F.3d 1211, 1224 (10th Cir. 2007) (citation omitted).

2. **Analysis**

The record does not establish that Mr. Griffin presented his due process claim to the KSC.  We consequently affirm the district court's denial of habeas relief because (a) Mr. Griffin did not invoke one complete round of state appellate review for his due process claim, (b) that claim is subject to anticipatory procedural bar, and (c) he has not demonstrated cause and prejudice or actual innocence to overcome the procedural default.

a. *Mr. Griffin Did Not Invoke One Complete Round of State Appellate or Post-Conviction Review*

i. <u>Direct appeal</u>

The district court concluded Mr. Griffin presented the substance of his due process claim to the KCA on direct appeal through his arguments about prosecutorial misconduct and sufficiency of the evidence. The court also determined Mr. Griffin presented the due process claim to the KSC because the prosecutorial misconduct issue he raised in his petition for review on direct appeal raised essentially the same underlying arguments.

We disagree with the district court's expansive reading of Mr. Griffin's arguments before the KCA on direct appeal. Mr. Griffin's brief did not mention due process or assert a federal constitutional error. Instead, Mr. Griffin's arguments challenged the trial court's application of state law, ultimately resting on his contention that the jury was erroneously instructed about the intent necessary to convict him of attempted second-degree murder. Although Mr. Griffin has attempted to repackage his jury instruction arguments into a due process claim on federal habeas review, we are unable to find any suggestion of the due process component of this claim in his direct appeal briefing before the KCA.

As noted above, Mr. Griffin attempted to assert a due process claim on post-conviction review. This indicates he understood the jury instruction, prosecutorial misconduct, and insufficient evidence arguments, which he previously made on direct appeal to the KCA, did not together state a federal due process claim.

Even if we assume Mr. Griffin raised due process before the KCA on direct appeal, he did not fairly present this claim to the KSC. Mr. Griffin's petition sought the KSC's review of the following issue: "Did the prosecutor engage in prosecutorial misconduct when he repeatedly referred to Appellant's guilt in terms of 'in for a penny in for a pound' and argued to the jury facts not in evidence?" State App. Vol. XIV at 12. Mr. Griffin contended the prosecutor improperly argued "that no matter how little evidence was presented, any evidence of [Mr. Griffin's] remotest connection supported a conviction for attempted murder or any other charge, regardless of what was charged or the strength of the evidence." *Id.* at 13. Mr. Griffin did not reference the Due Process Clause or the Fourteenth Amendment. The due process burden-dilution argument he now raises before us was not sufficiently presented to put the KSC on notice of the constitutional nature of the claim. He asserted error based on the prosecutor's misconduct and did not argue the intent instructions themselves violated due process.

Mr. Griffin's petition to the KSC also contended (1) the Government did not present sufficient evidence of intent, and (2) the prosecutor's arguments to the contrary were improper. *See id.* at 12-18. Mr. Griffin concedes those arguments are not the same as his due process claim. In his opening brief in the instant appeal, he insisted, "[a] claim attacking the *sufficiency of the evidence* is a different thing from a claim of instructional error that *lessened the State's burden of proof.*" Aplt. Br. at 11-12. We agree that Mr. Griffin's due process and sufficiency of evidence claims are separate and different claims.

- 13 -

ii. Post-conviction review

Mr. Griffin asserted a cursory due process claim in his brief to the KCA on behalf of his first post-conviction relief attempt, but he does not argue he asserted this claim to the KSC. His petition to the KSC for review, which was submitted only after he filed his petition for panel rehearing to this court, did not, for the reasons presented above, establish that he fairly presented or exhausted his due process claim.

Mr. Griffin attempted to present his due process claim to the state district court in 2010 when he filed his second post-conviction motion.[6] The district court denied the motion as successive. Mr. Griffin did not appeal the denial. Mr. Griffin consequently did not raise the due process claim before the KCA or the KSC in his second round of post-conviction relief.

Mr. Griffin did not raise the due process claim in his third attempt at post-conviction relief.

\* \* \*

---

[6] The motion asserted that his petition to the KSC to review the denial of his first post-conviction motion was supplemented with a filing complaining of jury instructions 7 and 8. The 2010 motion further argued that, as a result of these instructions, his "Constitutional right to a fair trial was denied violating the 14th Amendment due process clause" because they "impermissibly lowered the State's burden on the element of intent." App. Vol. 1 at 33. Mr. Griffin's recent supplementation of the record does not establish that he fairly presented this due process argument about jury instructions 7 and 8 to the KSC when he sought review of the KCA's affirmance of the denial of his first petition for post-conviction relief. Also, Mr. Griffin said the KSC "declined review of [Mr. Griffin's supplemental letter] due to it was not properly before the Court" under Kansas Supreme Court Rule 6.09, which permits parties to submit additional authority under limited circumstances. *Id.*

- 14 -

On the record before us, we cannot say that Mr. Griffin invoked one complete round of state appellate or post-conviction review of his due process claim. He therefore failed to fairly present the claim to each necessary state court.

b. *Mr. Griffin's Due Process Claim Is Procedurally Defaulted*

Mr. Griffin's due process claim is procedurally defaulted because he failed to assert it on direct appeal or for one full round of post-conviction review, and it is now untimely. Mr. Griffin does not appear to contest that he is now barred from raising his due process claim to the KSC. *See* Aplt. Reply Br. at 3 ("[T]o the extent that the State argues any procedural default . . . , such an error by Griffin may be forgiven if he can show cause and prejudice, or a showing of actual innocence."). Nor could he.

Under Kansas law, "those issues that could have been presented [on appeal], but were not presented are deemed waived. Where a defendant's claim has not been raised at trial or on direct appeal, such a default prevents the defendant from raising the claim in a second appeal or collateral proceeding." *State v. Neer*, 795 P.2d 362, 365-66 (Kan. 1990). As explained above, even if we accept the federal district court's conclusion that Mr. Griffin raised his due process claim to the KCA on direct appeal, he did not include the claim in his petition for review with the KSC, thereby waiving the claim.

Even if the due process claim were not waived, it would be untimely for Mr. Griffin to assert it now, either on direct appeal, *see* Kan. Sup. Ct. R. 8.03(a)(1) (providing a "jurisdictional" 30-day period for seeking KSC's discretionary review), or through post-conviction proceedings, *id.* 183(c)(3) (authorizing collateral post-conviction relief for "trial errors affecting constitutional rights . . . even though the error could have been

- 15 -

raised on appeal, provided exceptional circumstances excuse the failure to appeal"); Kan. Stat. Ann. § 60-1507(f)(2) (providing one-year limitation for filing post-conviction relief "may be extended by the court only to prevent a manifest injustice"). Indeed, the state district court denied post-conviction relief on Mr. Griffin's due process claim because he failed to raise it in his first post-conviction petition and failed to justify a late filing. Mr. Griffin failed to seek the KCA's or the KSC's review of the claim on post-conviction review.

Mr. Griffin's due process claim is accordingly subject to anticipatory procedural bar. "Anticipatory procedural bar occurs when the federal courts apply [a] procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." *Anderson v. Sirmons*, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007) (quotations omitted).[7] He therefore has procedurally defaulted his due process claim.

c. *Mr. Griffin Cannot Overcome Procedural Default*

When a federal court applies anticipatory procedural bar to a habeas petitioner's claim, it is "considered exhausted and procedurally defaulted for purposes of federal habeas relief." *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000).

---

[7] Mr. Griffin does not dispute that Kansas's procedural rules provide independent and adequate state procedural grounds for barring further review in state court of Mr. Griffin's unexhausted due process claim. We therefore do not address that issue. *See Thornburg v. Mullin*, 422 F.3d 1113, 1141 (10th Cir. 2005) (declining to consider whether state procedural bar was "adequate and independent" because habeas petitioner did "not challenge independence and adequacy here") (quotations omitted).

The procedural default can be overcome in two circumstances: "(1) if the prisoner has alleged sufficient 'cause' for failing to raise the claim and resulting 'prejudice' or (2) if denying review would result in a fundamental miscarriage of justice because the petitioner has made a 'credible' showing of actual innocence." *Frost*, 749 F.3d at 1231. Mr. Griffin argues he can overcome the procedural default because he has (a) alleged cause and prejudice and (b) made a credible showing of actual innocence. We disagree.

### i. Cause and Prejudice

"[C]ause under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quotations omitted). "Ineffective assistance of counsel . . . is cause for a procedural default . . . but [the ineffective assistance claim must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). "[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted . . . ." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In such a situation, a habeas petitioner must excuse an additional layer of procedural default by satisfying the cause and prejudice standard as to the ineffective assistance claim. *See id.*

Mr. Griffin argues to us that his counsel on direct appeal "was clearly ineffective" because the burden-dilution due process claim was obvious based on *Engelhardt*, 119 P.3d 1148. Aplt. Reply Br. at 3. He asserts *Engelhardt* establishes the State erroneously convicted him without having to prove he specifically intended to commit attempted

second-degree murder. The *Engelhardt* claim was therefore, he contends, "a dead-bang winner [that] reasonable counsel should have cited and argued." *Id.* But Mr. Griffin procedurally defaulted this ineffective assistance claim.

Mr. Griffin has not argued he presented an ineffective assistance claim based on *Engelhardt* to the state courts. The record indicates Mr. Griffin's third post-conviction relief petition asserted claims for ineffective assistance of appellate counsel, but Mr. Griffin has not demonstrated that any of those claims asserted appellate counsel ineffectively failed to raise the due process argument. To rely on the ineffective assistance of appellate counsel claim, Mr. Griffin must show a second layer of cause and prejudice for his failure to assert the ineffective assistance claim to the state courts. *Carpenter*, 529 U.S. at 453. He has not attempted to do so.

Even if we assume Mr. Griffin's third petition for post-conviction relief asserted his ineffective assistance claim based on *Engelhardt*, he still fails to demonstrate cause. In relevant part, the KCA denied Mr. Griffin's third petition for post-conviction relief because Mr. Griffin could have raised his ineffective assistance of appellate counsel claims in his first petition for post-conviction relief and he was therefore procedurally barred from raising them in a second or successive petition. As explained above, Mr. Griffin has not asserted an additional layer of cause and prejudice to excuse his failure to raise ineffective assistance of counsel based on *Engelhardt* in his first post-conviction

petition.[8]  That claim therefore cannot establish cause to excuse the procedurally

defaulted burden-dilution due process claim.[9]

### ii.  Actual Innocence

The fundamental miscarriage of justice exception to the procedural default rule "is

a markedly narrow one, implicated only in extraordinary cases where a constitutional

violation has probably resulted in the conviction of one who is actually innocent." *Magar*

*v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (quotations omitted).  The actual innocence

standard is "demanding" and generally requires the petitioner to "demonstrate that more

likely than not, in light of new evidence, no reasonable juror would find [the petitioner]

guilty beyond a reasonable doubt."  *House v. Bell*, 547 U.S. 518, 538 (2006).  A claim of

actual innocence typically must be based on new evidence suggesting "factual innocence,

not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see*

*also Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("The miscarriage of justice

exception is concerned with actual as compared to legal innocence. . . . To be credible, a

claim of actual innocence must be based on reliable evidence not presented at trial."

(quotations omitted)).

---

[8] Mr. Griffin's first state post-conviction petition did allege his *trial* counsel was ineffective for failing to seek dismissal of the attempted second-degree murder charge. But this claim asserted a basis for ineffectiveness different from the basis on which Mr. Griffin now claims his *appellate* counsel was ineffective, i.e., failure to raise an *Engelhardt*/due process challenge.

[9] Because Mr. Griffin failed to demonstrate cause, we need not consider whether he showed prejudice.

Mr. Griffin has not presented new evidence. Instead, he argues the Government did not prove the specific intent for second-degree murder required by *Engelhardt* and *Overstreet II*, which were decided after his conviction at trial. His argument fails to satisfy the miscarriage of justice exception.

First, he proffers no new evidence showing he lacked specific intent to commit second-degree murder. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (explaining a petitioner can only pass through the "actual innocence gateway" by showing that, "in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt") (quotations omitted)).

Second, this court has not recognized that a prisoner can overcome a habeas procedural default by attempting to demonstrate actual innocence based on judicial opinions issued after the prisoner's trial. Mr. Griffin has not argued we should adopt this view of showing actual innocence, nor has he provided authority permitting such a course under § 2254 based on state law court decisions.

### C. AEDPA Review

As noted above, the record on appeal does not establish that Mr. Griffin exhausted his due process claim by presenting it to the KSC. If he had done so, we would review the Kansas courts' denial of the claim under the deferential standard of § 2254(d)(1). Even if we assume the claim was exhausted, Mr. Griffin is not entitled to habeas relief.

1. **Legal Background**

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits

- 20 -

in the absence of any indication or state-law procedural principles to the contrary."

*Harrington v. Richter*, 562 U.S. 86, 99 (2011).

When a state court on direct appeal or post-conviction habeas review denies a state defendant's federal claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), *see* 28 U.S.C. § 2254, precludes federal habeas relief unless the state court's determination

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

AEDPA "erects a formidable barrier to federal habeas relief," *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013), and "requires federal courts to give significant deference to state court decisions" on the merits, *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013).

"It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (per curiam) (quotation omitted). Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.

"If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Titlow*, 134 S. Ct. at 16 (quotation omitted). "Indeed, AEDPA stops just 'short of

imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings.'" *Frost v. Pryor*, 749 F.3d 1212, 1223 (10th Cir. 2014) (quoting *Richter*, 131 S. Ct. at 786).

2. **Analysis**

Mr. Griffin argues the jury instructions and improper remarks by the prosecutor diluted the state's burden of proof on the intent element of attempted second-degree murder and violated due process. He points to Supreme Court cases holding that due process requires proof of a crime's elements beyond a reasonable doubt. *E.g.*, *In re Winship*, 397 U.S. 358, 364 (1970). But, under § 2254(d)(1), he must show that the state courts unreasonably applied this requirement in denying his due process claim. Because, as we explain below, Kansas law is not clear on whether the jury instructions in Mr. Griffin's case were sufficient, fair-minded jurists could at least disagree whether the state courts' disposition on this issue was correct. Under AEDPA, we must therefore defer to the Kansas courts and affirm the denial of his federal habeas petition.

Mr. Griffin also relies on Supreme Court cases he describes as standing for the proposition that in criminal prosecutions, "shifting the burden of proof via legal presumptions" violates the Due Process Clause. Aplt. Br. at 21 (emphasis omitted). *E.g.*, *Sandstrom v. Montana*, 442 U.S. 510 (1979). It follows, he argues, that the Due Process Clause must also forbid "outright *relieving* the State of the burden altogether, as was done in Mr. Griffin's case." *Id.* (emphasis in original). Even assuming Mr. Griffin has stated "clearly established" law, he still is not entitled to relief. It is unclear whether, under Kansas law, the state trial court did in fact relieve the State of its duty to prove all

- 22 -

elements of attempted second-degree murder beyond a reasonable doubt. We therefore cannot conclude the KCA reached "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

Mr. Griffin's argument rests on two KSC decisions: *Engelhardt* and *Overstreet II*.

a. State v. Engelhardt

After Mr. Griffin's trial and while his direct appeal was pending before the KCA, the KSC decided *Engelhardt*. Mr. Engelhardt and Brian Smith stabbed another man to death. *Engelhardt*, 119 P.3d at 1155-56. Mr. Smith pled guilty and cooperated with the prosecution. *Id.* at 1157. Mr. Engelhardt was charged with and convicted of first-degree murder. *Id.* Because the evidence was unclear who delivered the fatal blow, the prosecution sought to convict Mr. Engelhardt as an aider and abettor. *See id.* at 1164.

At trial, the prosecution proposed two aiding and abetting jury instructions: (1) "[a] person who, either before or during its commission, intentionally aids, abets, counsels or procures another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime;" and (2) "[a] person who intentionally aids or abets another to commit a crime is also responsible for any other crime committed in carrying out or attempting to carry out the intended crime, if the other crime was reasonably foreseeable." *Id.* at 1163.

Mr. Engelhardt objected, arguing these instructions allowed the jury to convict him of first-degree murder without proof of premeditation. *Id.* at 1163-64. The trial

- 23 -

court gave the instructions because it understood Kansas law to allow Mr. Engelhardt to be convicted if his aiding and abetting the underlying crime of aggravated battery—stabbing the victim—made murder reasonably foreseeable. *Id.* at 1164.

The KSC understood the instructions to permit a conviction for felony-murder and found fault in them because the trial court had failed to instruct on the underlying felony—aggravated battery. *Id.* The KSC nonetheless affirmed because the evidence overwhelmingly proved Mr. Engelhardt was guilty of intentional murder as a principal or aider and abettor. *Id.* at 1164-65.

b. State v. Overstreet

After Mr. Griffin's conviction was affirmed on direct appeal, the KSC decided *Overstreet II*. In that case, a passenger exited the truck Jason Overstreet was driving and fired shots into a nearby vehicle while Mr. Overstreet remained inside. *Overstreet II*, 200 P.3d at 431. The shots missed the victim. *Id.* Mr. Overstreet did not fire the shots, but the state charged him with and the jury convicted him of aiding and abetting attempted first-degree murder and, in the alternative, aggravated assault. *Id.* at 431-32. The trial court gave the same aiding and abetting and reasonable foreseeability instructions as in *Engelhardt*. *Id.* at 433.

On appeal, the KCA concluded *Engelhardt* did not control and found no error in the jury instructions. *Overstreet I*, 2008 WL 360642, at *4. The KSC accepted the case for review and held *Engelhardt* did control: "giving the aiding and abetting foreseeability instruction negated the State's burden to prove an essential element of the crime charged: premeditation." *Overstreet II*, 200 P.3d at 435. It explained "the fact

that it may be foreseeable that someone may die as a result of a particular course of action does not give rise to the conclusion that the cause of death was premeditated." *Id.* The KSC vacated Mr. Overstreet's conviction and remanded for a new trial. *Id.* at 437.

c. *Mr. Griffin Is Not Entitled to Habeas Relief*

Fair-minded jurists could disagree as to whether denial of Mr. Griffin's due process claim conflicts with Supreme Court law. He therefore cannot satisfy § 2254(d)(1).

First, fair-minded jurists could disagree as to whether denial of Mr. Griffin's due process claim conflicts with Supreme Court law in light of *Engelhardt*. In that case, the defendant was convicted of first-degree murder and challenged the aiding and abetting and foreseeability jury instructions, which were similar to the instructions in this case. The KSC found error, not in the trial court's giving the foreseeability instruction, but in failing to instruct on aggravated battery as the underlying felony offense that would support a felony-murder conviction. *Engelhardt*, 119 P.3d at 1164-65. Accordingly, the KSC did not address whether the instructions improperly allowed the murder conviction without proof of specific intent—in this instance, premeditation—but instead addressed the erroneous omission of an essential instruction for a felony murder conviction.

In Mr. Griffin's case, the trial court not only gave the aiding and abetting and foreseeability jury instructions, but also an instruction on attempted robbery, the underlying offense from which an aider and abettor could reasonably foresee attempted second-degree murder. Although the trial occurred before the KSC decided *Engelhardt*, the trial court avoided the flaw that the KSC found in the *Engelhardt* jury instructions.

- 25 -

*Engelhardt* therefore is not precedent for Mr. Griffin's contention that the jury was allowed, in violation of Kansas law, to convict by not having to find specific intent to commit attempted second-degree murder. It follows that fair-minded jurists could disagree as to whether denial of Mr. Griffin's claim conflicts with Supreme Court law in light of *Engelhardt*.[10]

Second, fair-minded jurists could disagree as to whether denial of Mr. Griffin's claim conflicts with Supreme Court law in light of *Overstreet II*. In that case, the KSC vacated Mr. Overstreet's aiding and abetting first-degree murder conviction because the aiding and abetting and foreseeability jury instructions improperly allowed the jury to convict without having to find proof of premeditation. The court relied on *Engelhardt*, even though, as we have explained, the KSC in that decision found error in the jury instructions for a different reason. Nonetheless, had *Overstreet II* been decided before Mr. Griffin's trial, he may have been able to argue that the aiding and abetting and foreseeability instructions improperly allowed the jury to convict him of attempted second-degree murder without proof of specific intent.

---

[10] During the ensuing three years, two KCA decisions confirmed *Engelhardt* did not clearly resolve Mr. Griffin's mens rea issue in his favor. First, the KCA affirmed Mr. Griffin's convictions on direct appeal after *Engelhardt* had been decided. *See State v. Griffin*, No. 95,346, 153 P.3d 570, 2007 WL 806008, at *3-6 (Kan. Ct. App. Mar. 16, 2007) (table decision) (unpublished). Second, in *Overstreet I*, the KCA concluded *Engelhardt* was not controlling in that case. *Overstreet I*, 2008 WL 360642, at *4. Until the KSC decided *Overstreet II* and reversed *Overstreet I*, it was not clear that *Engelhardt*, in relevant part, involved an error other than failing to instruct on the underlying felony in a felony murder case.

But Mr. Griffin has not demonstrated that *Overstreet II* should be applied retroactively in his state post-conviction proceedings. Kansas courts determine whether a decision should be retroactively applied in collateral proceedings by applying the following test:

> First, the court must determine whether the movant has properly raised the issue in his or her collateral attack. [Kansas] Supreme Court Rule 183(c) limits the issues that may be raised in a collateral attack. Second, the court determines whether the case was final when the new law was established. If a case was final when the new law was established, the general rule is that the new law will not be applied to cases on collateral attack. Third, if the case was final before the new law was established, the court must determine whether any exception to the general rule against retroactive application applies.

*Gaudina v. State*, 92 P.3d 574, 576 (Kan. 2004) (citations omitted). *Overstreet II* was decided after Mr. Griffin completed his direct appeal. He has consequently failed to show why the general rule against retroactivity would not apply. More important for purposes of federal habeas review, he has failed to demonstrate that—even assuming the Kansas courts should have applied *Overstreet II* retroactively under state law—their failure to do so violated clearly established principles of federal due process law.

Moreover, in *State v. Barnett*, 308 P.3d 30, 2013 WL 4729219 (Kan. Ct. App. Aug. 30, 2013) (table decision) (unpublished), decided after *Overstreet II*, the KCA explained "the holding in *Engelhardt* relates only to the element of premeditation, suggesting that the [aiding and abetting and foreseeability] instruction is appropriate

when limited to other charges." *Id.* at \*4.[11]  As with the charges in *Barnett*, the attempted

second-degree murder charge in Mr. Griffin's case does not include the element of

premeditation.  *See State v. Warledo*, 190 P.3d 937, 954 (Kan. 2008).  The *Barnett*

decision indicates Kansas law is unsettled as to *Overstreet II*'s scope.  *Barnett* alone

indicates fair-minded jurists could disagree as to whether denial of Mr. Griffin's claim

conflicts with Supreme Court law.[12]

---

[11] On appeal, the State conceded Mr. Griffin's jury instructions were erroneous under *Overstreet II*, *see* Aplee. Br. at 13-14, but the KCA's discussion in *Barnett* raises questions about that position.

[12] The federal district court concluded the State presented evidence that could support a reasonable inference that Mr. Griffin shared Mr. Franklin's intent to kill the victim.  The court said,

> [Mr. Griffin] and his brother agreed to rob a restaurant *in the daytime*, and did so.  [Mr. Griffin] participated willingly in that robbery by driving [Mr. Franklin] to and from the robbery.  [Mr. Griffin] and [Mr. Franklin] did not break into the restaurant during the nighttime, when it would be unlikely for them to encounter other persons there.  Instead, they chose to rob a restaurant during the daytime when they knew that it would likely be occupied.  Why?  It is reasonable to infer that this was because they wanted an employee to be present to retrieve the money from wherever it was kept.  And it is not at all reasonable to believe that the robbers intended merely to ask the victim for the money thinking he would comply without the necessity of any show of force, or to leave empty-handed in the event the victim chose not to comply.  Given the familial relationship between [Mr. Griffin] and the shooter, the participation of [Mr. Griffin] in driving [Mr. Franklin] to the restaurant, the daytime nature of the robbery, [Mr.] Griffin's possession of the gun after the shooting, and the other reasonable inferences that flow from the totality of the evidence of record, an inference of [Mr.] Griffin's intent for [Mr.] Franklin to use whatever force was necessary, including a gun, to carry out the robbery is reasonable.  The facts establish a coordinated effort with a specific illegal objective in mind.  [Mr.] Griffin shared [Mr.] Franklin's specific intent by knowing the full

Continued . . .

- 28 -

\* \* \*

Mr. Griffin is not entitled to relief under § 2254(d)(1) because fair-minded jurists could disagree as to whether the state courts unreasonably applied clearly established federal law in assessing whether his jury instructions and the prosecutor's remarks diluted the state's burden of proof in violation of due process.

## IV. **CONCLUSION**

The record does not show Mr. Griffin exhausted his burden-dilution due process claim in the Kansas courts, and he has failed to excuse procedural default by demonstrating cause and prejudice or actual innocence. Even if we assume he exhausted the claim, it would not survive AEDPA review. We therefore affirm the district court's denial of Mr. Griffin's § 2254 petition.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge

---

extent of his criminal purpose and aided him by driving [Mr. Franklin] to and from the crime.

App. Vol. III at 208-09 (emphasis in original). This provides an additional reason why fair-minded jurists could disagree as to whether denial of Mr. Griffin's due process claim conflicts with Supreme Court law.