FILED
United States Court of Appeals
Tenth Circuit

October 26, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JEREMY V. PINSON,

      Defendant-Appellant.

No. 09-6119
(D.C. Nos. 5:09-CV-00142-R and
5:07-CR-00023-R-1)
(W.D. Okla.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

---

Before **HARTZ**, **EBEL** and **O'BRIEN**, Circuit Judges.

---

Defendant-Appellant Jeremy Vaughan Pinson, a federal prisoner appearing pro se,

moved the district court to vacate his sentence under 28 U.S.C. § 2255. Pinson raised

nine challenges to his guilty plea, conviction, and sentence; the district court denied his

motion and his request for a Certificate of Appealability (COA). He presses four issues

in seeking a COA from this court: (1) that he was incompetent at the time of his guilty

plea; (2) that the court order restricting his correspondence during his original district

court proceedings violated his First and Sixth Amendment rights; (3) that the district

court erred in denying him leave to amend his § 2255 motion; and (4) that the district

court violated his Sixth Amendment rights by ordering his original trial counsel to file an affidavit in support of the government in his § 2255 proceeding. We DENY Pinson's request for a COA in full, and DISMISS the appeal.

I.     Background

On March 16, 2007, Pinson pleaded guilty to one count of making a false statement to a United States Marshal in violation of 18 U.S.C. § 1001(a)(2) and one count of threatening a juror in violation of 18 U.S.C. § 876(c), both committed while he was on trial for an unrelated charge. In his plea agreement, Pinson waived his right to "[a]ppeal or collaterally challenge his guilty plea, sentence and restitution imposed, and any other aspect of his conviction, including but not limited to any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues." (R. vol. 1 at 58.) The agreement specifically preserved his right to appeal "a sentence above the advisory sentencing guideline range determined by the Court to apply to [the] case." (Id.) Pinson was sentenced to 180 months, to run consecutively with a sixty-month sentence imposed the same day in his underlying criminal case. As both his total sentence and the sentence imposed for his § 1001(a)(2) and § 876(c) violations exceeded the top end of the guidelines range, he appealed to this court, which held the sentence both procedurally and substantively reasonable in all respects. See United States v. Pinson, 542 F.3d 822, 839 (10th Cir. 2008). On February 5, 2009, Pinson filed a motion to vacate his sentence under 28 U.S.C. § 2255 claiming nine constitutional defects in his conviction. In the district court, the United States sought enforcement of Pinson's appeal waiver, and the

district court denied the § 2255 motion.  Pinson now asks this court for a COA permitting

him to appeal from that decision.

II.     Discussion

In order to obtain a COA, Pinson must make "a substantial showing of the denial

of a constitutional right."  28 U.S.C. § 2253(c)(2).  Such a showing is made only where a

prisoner demonstrates "that jurists of reason would find it debatable" that a constitutional

violation occurred, and that the district court erred in its resolution.  Slack v. McDaniel,

529 U.S. 473, 484 (2000).  Where a criminal defendant attempts to appeal an issue that

the government claims has been waived in a plea agreement, the courts of this circuit

conduct a three-step test to determine whether the issue may be appealed.  United States

v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc).  This analysis considers: (1)

whether the issue appealed or challenged falls within the scope of the text of the waiver;

(2) whether the waiver was knowingly and voluntarily entered into; and (3) whether

enforcing the waiver would result in a miscarriage of justice.  Id.  Finally, because Pinson

appears pro se, we must construe his arguments liberally; this rule of liberal construction

stops, however, at the point at which we begin to serve as his advocate.  See Hall v.

Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

Two of Pinson's claims of error go to his original convictions; the other two

address the actions of the district court in his § 2255 proceedings.

A.      Incompetency at the Time of the Plea

In his first claim of error challenging his convictions, Pinson asserts that he was

-3-

mentally incompetent at the time of his guilty plea, and that the judge failed to adequately ascertain that Pinson's plea was knowing and intelligent. Because Pinson phrased this claim to the district court in terms of ineffective assistance of counsel with respect to his competency, rather than directly claiming that he was incompetent and thus that his plea was invalid, the district court held the claim barred by his appeal waiver. Given the liberal construction we are bound to give the filings of pro se applicants, however, we cannot embrace the district court's reasoning on this issue. Liberally construed, Pinson's competency claim goes to the validity of the plea agreement itself—including the appeal waiver provision—and so the appeal waiver cannot preclude the claim. See Hahn, 359 F.3d at 1325.

But, as the district court noted, in accepting Pinson's guilty plea, the court had ample evidence before it both of Pinson's history of emotional problems and his competency as of the date of the hearing. Both prior to accepting the guilty plea and as part of the presentence investigation, Pinson's competency was thoroughly tested during his original proceedings. At Pinson's plea colloquy, the following exchange occurred between the judge, the defendant, and the defendant's counsel:

> THE COURT: Have you ever been confined in an institution for the treatment of mental illness or ever been found mentally incompetent or mentally ill?
> DEFENDANT PINSON: Yes, Your Honor.
> THE COURT: Have you actually been found mentally incompetent or mentally ill—
> DEFENDANT PINSON: Not mentally incompetent, but suffering from depression and other maladies, but not actually incompetent or anything of that matter.

> THE COURT: Are you satisfied you understood what you were doing at the time of these alleged offenses?
>
> DEFENDANT PINSON: I knew exactly what I was doing, [Y]our Honor.
>
> THE COURT: And are you satisfied you understand what's going on today?
>
> DEFENDANT PINSON: I understand everything that's going on, sir.
>
> THE COURT: Do you have any doubt about that, Mr. Wells?
>
> MR. WELLS: No. As a matter of fact, on the record, I would inform the Court that I have—the Court authorized me to hire a psychologist to help in this case. He has reviewed the records. He has also talked with Mr. Pinson over at the county jail and I do anticipate using him at the time of sentencing for mitigation purposes, but he informed me that it is also his opinion that Mr. Pinson is very competent, that he does have definite issues, but that he is competent to understand what he was doing.

(R. vol. 1 at 61-62.) Based upon this exchange and the evidence before the court both at the time of the plea and before sentencing, we cannot say that the original court had any reason to believe that Pinson was not competent to plead guilty and waive his right to appeal. In his § 2255 petition, Pinson adduced no competent evidence that would lead us to question this conclusion. Pinson has thus failed to carry his burden of making out a "substantial showing" of the denial of his right to due process, and we thus decline to grant a COA on this issue.

B.     Restriction on Correspondence

Pinson next argues that an order requiring all his correspondence go through his counsel during his original trial violated his First and Sixth Amendment rights. Because this claim addresses an "aspect of his conviction" involving a "pretrial disposition[]," it falls within the scope of the appeal waiver. Because he does not challenge the knowing and voluntary character of the waiver with respect to this argument, and because we have

held that the judge had no reason to question his competency at the time of the plea, we apply the language of the plea agreement and find this issue waived. See Hahn, 359 F.3d at 1325.

C.    Denial of Leave to Amend Motion

In his § 2255 proceeding, Pinson sought leave of the district court to amend his petition "to expand the basis for claims already raised by alleging additional facts and supporting exhibits which support the defendant's claims." (R., vol. 1 at 45.) The district court denied this motion, due to the scope of Pinson's appeal waiver and lack of merit in his ineffective assistance of counsel claims.

We review the district court's decision to deny Pinson leave to amend his petition for abuse of discretion. Stafford v. Saffle, 34 F.3d 1557, 1560 (10th Cir. 1994). Under Federal Rule of Civil Procedure 15(a), a district court may deny leave to amend pleadings due to, among other reasons, "futility of the amendment." Stafford, 34 F.3d at 1560 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Here, because Pinson's proposed amendment would only have added further factual support for claims that the district court had already found legally flawed, we cannot say that the district court abused its discretion in denying Pinson leave to amend.

D.    Attorney-Client Privilege Sixth Amendment Claim

In his § 2255 proceeding before the district court, four of Pinson's claimed nine errors were premised upon ineffective assistance of counsel. The United States sought an affidavit from Pinson's original attorney to rebut Pinson's claims; when the attorney

refused, the government moved the court for an order compelling the attorney's production of an affidavit, which the court granted. Pinson argues that by requiring his attorney to violate attorney-client privilege, this order violated his Sixth Amendment right to counsel.

The district court held that, by raising ineffective assistance of counsel in his § 2255 motion, Pinson implicitly waived attorney-client privilege with respect to communications with his trial counsel, and thus that ordering the affidavit did not interfere with Pinson's Sixth Amendment rights. The district court cited several extra-circuit opinions in support of its conclusion. Because it is an issue of first impression in this circuit, we examine this claim in greater depth.

     1.     Waiver of Attorney-Client Privilege Via Ineffective-Assistance Claim

The theoretical basis for the assertion that raising an ineffective-assistance claim waives attorney-client privilege is the exception to the privilege that applies when a litigant chooses to place privileged communications directly in issue. The most straightforward application of this rule would be in the context of legal malpractice claims, in which the merits of the claim simply cannot be assessed without the revelation of otherwise-privileged communications. See Kenneth S. Broun, 1 McCormick on Evidence § 91.1 (6th ed. 2006) ("[W]hen client and attorney become embroiled in a controversy between themselves, as in an action by the attorney for compensation or by the client for damages for the attorney's negligence, the seal is removed from the attorney's lips.").

The same principle applies when "a party interjects the 'advice of counsel' as an essential element of a claim or defense."  1 McCormick § 93.  In that circumstance, "that party waives the privilege as to all advice received concerning the same subject matter." Id.  The Supreme Court has recognized this rule for well over a century.  See Hunt v. Blackburn, 128 U.S. 464, 470-71 (1888) ("When Mrs. Blackburn entered upon a line of defense which involved what transpired between herself and [her lawyer,] she waived her right to object to his giving his own account of the matter.").  This circuit, as well, has acknowledged the implied waiver of attorney-client privilege that arises when a party puts his counsel's advice in issue.  See Frontier Ref., Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 699 (10th Cir. 1998) (surveying different approaches to determine when implied waiver arises).

When a habeas petitioner claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications. The Supreme Court's pathmarking ineffective-assistance case, Strickland v. Washington, itself hinted at this requirement.  466 U.S. 668, 691 (1984) ("[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's . . . litigation decisions.").

Many of our sister circuits have recognized this rule.  See, e.g., In re Lott, 424 F.3d 446, 453 (6th Cir. 2005) ("The implied waiver in habeas proceedings [is] the result of a petitioner's assertion of his own counsel's ineffectiveness."); Bittaker v. Woodford,

-8-

331 F.3d 715, 716 (9th Cir. 2003) (en banc) ("It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer."); Johnson v. Alabama, 256 F.3d 1156, 1178 (11th Cir. 2001) (holding that by bringing an ineffective-assistance claim, § 2255 movant waives attorney-client privilege with respect to conversations that "bare on strategic choices made during representation"); Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1974) ("[Attorney-client] privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness or incompetence."); Laughner v. United States, 373 F.2d 326, 327 (5th Cir. 1967) ("[W]here, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue.").  The Ninth Circuit has also indicated that this rule applies as well to the attorney's work-product privilege.  Bittaker, 331 F.3d at 722 n.6.

Further, numerous district courts, including district courts within this circuit, have noted the implied waiver of attorney-client privilege that arises when a prisoner claims ineffective assistance of counsel.  See, e.g., Barrett v. United States, No. 09-CIV-105-JHP, 2009 WL 2982670, at *3 (E.D. Okla. Sept. 11, 2009) (unpublished); Garcia v. Hartley, No. 07-CV-00781-CMA, 2009 WL 1392082, at *7 (D. Colo. May 15, 2009) (unpublished); Mower v. United States, No. 2:08-CV-5-TC, 2008 WL 2223200, at *1 (D.

Utah May 27, 2008) (unpublished).

Given the ample, unanimous federal authority on point, we hold that when a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove his claim.

2.      The Order Compelling Attorney Testimony

To hold that Pinson waived his attorney-client privilege with respect to his § 2255 claims, however, does not end the analysis.  As the Ninth Circuit observed in Bittaker, "the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it."  331 F.3d at 720.  It is not entirely clear that that occurred in this case.  In its request for an affidavit from Pinson's attorney, the United States argued that because Pinson had "raised questions as to the effectiveness of his defense counsel by virtue of certain specific acts or omissions," he had waived attorney-client privilege and that the court should order the attorney to produce "a detailed affidavit outlining information in response to the allegations of ineffective assistance of counsel cited in defendant's [§] 2255 motion." (Dist. Ct. Doc. No. 75 at 2.)[1]  In granting the motion, the district court ordered the attorney "to provide an affidavit addressing the issues raised in

_____

[1] This motion and the order granting it were not originally included in the record on appeal.  In order to evaluate the district court's actions, we hereby take judicial notice of the motion and the order and add them to the record as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

defendants [sic] § 2255 Motion." (Dist. Ct. Doc. No. 76.)

We find the potential scope and lack of specificity in the district court's order in this case a bit troubling. In compelling a new declaration from Pinson's attorney, the order did little to indicate precisely what information the attorney was required to disclose, other than to refer generally to the claims of ineffective assistance of counsel. Perhaps the order could have been more narrowly tailored. While compelling a new declaration or the production of notes from an attorney in a case such as this is not per se unreasonable, such a requirement should ideally be carefully tailored to protect prisoners' Sixth Amendment rights. Cf. Johnson, 256 F.3d at 1168 n.4 (affirming where district court ordered production of counsel's notes, then conducted in camera review of the notes to determine "whether and to what extent [prisoner's] communication presumptively protected by the attorney-client privilege is relevant to the specific ineffective assistance of counsel claims raised by [prisoner] in his habeas petition").

Nevertheless, we find no abuse of discretion, see Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1112 (10th Cir. 2001) (noting that district court determinations regarding waiver of attorney-client privilege are reviewed for abuse of discretion), and we conclude that Pinson has failed to satisfy AEDPA's "substantial showing" requirement for granting a COA. See 28 U.S.C. § 2253(c)(2).

Conclusion

For the foregoing reasons, we DENY Pinson's request for a COA and DISMISS

-11-

the appeal.  In addition we DENY Pinson's request to proceed on appeal <u>in forma</u>

<u>pauperis</u>.


                              ENTERED FOR THE COURT



                              David M. Ebel
                              Circuit Judge