FILED
United States Court of Appeals
Tenth Circuit

November 28, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

SIMAO PEDRO CATCHAI,

      Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

      Respondent.

No. 14-9549
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **McKAY**, and **MATHESON**, Circuit Judges.

Pro se petitioner Simao Pedro Catchai is a native and citizen of Angola in the

United States on an expired nonimmigrant-visitor visa. In proceedings before an

---

[*] After examining the briefs and the appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App.
P. 32.1 and 10th Cir. R. 32.1.

immigration judge (IJ) and the Board of Immigration Appeals (BIA) he sought asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT) on the basis of political persecution. On review of Mr. Catchai's account of being forced to flee Angola after criticizing its ruling political party, the IJ found him not credible and ordered his removal. The BIA affirmed. Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition for review.

## I. BACKGROUND

### A. The Persecution Claim

Mr. Catchai gives the following account of what led him to the United States: He was the pastor of a 700-member church in Angola. Hoping to attend a ministers' conference in the United States in June 2008, he applied for a visa but did not receive it in time to attend. Later, however, it came in handy.

Angola was in the midst of its first legislative elections since 1992. The country's ruling party, the Popular Movement for the Liberation of Angola (MPLA), dominated the state-run media apparatus and distributed cash, vehicles, refrigerators, water, and other items to churches and other entities to encourage their support for the MPLA. Sometime in June or July 2008 the MPLA asked Mr. Catchai to participate in a "friendship of the government and the church." R. at 76. He declined and was threatened by local authorities with "offenses against the security of the state," though he was not arrested. *Id.* at 135.

2

The election was held on September 5 and 6, 2008. The MPLA won more than 80% of the parliamentary seats. On October 26, the day the election results were published, Mr. Catchai spoke to his congregation, criticizing the election as fraudulent and unfree. That night, he and two church members were at his house (his wife was not) when two police cars arrived. Several men exited the cars, entered the house's living room, and began questioning the two church members. Mr. Catchai was in the adjacent bedroom but could see through the curtains that the men were wearing masks and civilian clothes, although two or three also had military badges on their belts. He became fearful because in Angola's recent past people who criticized the government would be killed by government agents who concealed their identities. He escaped through a bedroom window and was shot at twice as he fled.

Mr. Catchai hid in a nearby abandoned house, then later that night caught a ride to a village in a neighboring province, where he stayed for more than a month before moving to Angola's capital of Luanda. He had been to Luanda many times before and had left clothes and his passport with a friend there. He arranged to fly to South Africa in December 2008. On the day of his flight he was stopped by an immigration officer at the airport and told he was to be arrested. The officer relented, however, upon learning that he shared the same family name as Mr. Catchai.

Soon after Mr. Catchai flew to South Africa, he was joined by his wife. In February 2009, however, an outbreak of xenophobia swept South Africa, motivating him

to leave the country. He came to the United States on April 1, 2009, on his still-unexpired visa. His wife remains in South Africa.

### B. Procedural History

On January 11, 2010, Mr. Catchai applied for asylum. His application was denied and his removal hearing was held before an IJ on March 26, 2012. He was represented by counsel at the hearing. The IJ found that the documents presented by Mr. Catchai to support his account of escaping from Angola were vague, inconsistent with his testimony, and not properly authenticated, and that the background material submitted by Mr. Catchai, such as State Department reports, indicated that Angola's 2008 election was generally peaceful. Consequently, the IJ found him not credible, denied his application, and ordered his removal. Mr. Catchai appealed through counsel to the BIA, which in a panel decision upheld the IJ's determinations.

## II. DISCUSSION

### A. Statutory and Regulatory Framework

"To obtain asylum, petitioners must prove that they are refugees as defined in 8 U.S.C. § 1101(a)(42)(A), and then persuade the Attorney General to exercise his discretion to grant relief under 8 U.S.C. § 1158(b)." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1202 (10th Cir. 2006) (internal quotation marks omitted). "Applicants are refugees if they can demonstrate they are unwilling or unable to return to their country because of past persecution or a 'well-founded fear' of future persecution, which is 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'"

4

*Id.* (quoting 8 U.S.C. § 1101(a)(42)(A)). To obtain withholding of removal or protection under the CAT, Mr. Catchai must show, respectively, that if returned to his home country he faces "a clear probability of persecution" or will more likely than not be tortured. *Id.* (internal quotation marks omitted).

## B.       Standard of Review

We review the BIA's legal conclusions de novo, *see Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008), but "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We have interpreted this statutory command to require that factual determinations be "supported by reasonable, substantial and probative evidence considering the record as a whole." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). And more specifically, an adverse credibility determination must be supported by "specific, cogent reasons" for disbelieving the applicant's testimony. *Id.* (internal quotation marks omitted). Because Mr. Catchai's application was reviewed by a three-member panel of the BIA, our review focuses solely on the grounds stated in the BIA's opinion, though we may supplement our understanding of those grounds by reference to the IJ's decision. *See Uanreroro*, 443 F.3d at 1203–04.

## C.       Mr. Catchai's Arguments

### 1.       Additional Corroborative Evidence

Mr. Catchai argues that the BIA erred by failing to recognize that the IJ had an obligation to request additional corroborating evidence from him if his initial showing

was insufficient to meet his burden of proof. Construing this pro se argument liberally, *see United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009), we note that "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii) (asylum proceedings); *see also id.* § 1229a(c)(4)(B) (for removal proceedings). This statute, however, does not affirmatively obligate the trier of fact to request corroborating evidence. Further, such a request first requires the trier of fact to find the testimony to be "otherwise credible." Here the IJ did not so find, and the BIA agreed. The BIA credited the IJ's adverse credibility determination for the following reasons: (1) Mr. Catchai's testimony was inconsistent with other evidence of when he received various documents from church associates in Angola that purported to corroborate his story; (2) the certificate of translation of those documents apparently preceded Mr. Catchai's alleged reception of them; (3) the statements in the documents were vague; (4) Mr. Catchai could not authenticate the signatures of the documents' purported authors; and (5) the background materials did not support his account. These reasons are properly based on the record, and Mr. Catchai does not challenge the underlying findings. Consequently, his argument (and any implicit challenge to the credibility finding) is unavailing.

### 2. Due Process

Mr. Catchai next argues that he was denied due process under the Fifth and Fourteenth Amendments to the United States Constitution. One of his arguments appears to be that because the IJ characterized his application as "a very close case," R. at 117, he met his burden of proof for asylum. A close case, however, is not the same thing as a winning one, and both the BIA and IJ opinions explicitly state that Mr. Catchai failed to carry his burden of proof. *See id.* at 4 (BIA opinion) ("Apart from the respondent's discredited testimony, his corroborative evidence, including background materials did not independently satisfy his burden of proving his eligibility for asylum."); *id.* at 50 (IJ opinion) ("[T]he Court finds that the respondent's testimony is not sufficient to amount to reliable evidence sufficient for the respondent to meet his burden of proof."). This argument fails.

Mr. Catchai also appears to challenge his removal on the ground that the IJ and BIA were biased. He asserts that "they are supporting the dictatorship in Angola and the torture of young people because of the economic ties between the corrupted government of Angola and the United States." Pet'r's Br. at 17. Suffice it to say that he provides no supporting evidence. We reject the challenge.

### 3. Treaty Obligations

Mr. Catchai argues that his removal would be contrary to the United States' treaty obligations under the CAT. "To obtain relief under the Convention Against Torture, aliens must prove it is more likely than not they will be tortured upon return, although the

7

torture need not be on account of a protected status." *Uanreroro*, 443 F.3d at 1202. The BIA ruled that Mr. Catchai relied upon the same discredited testimony for both his asylum and CAT claims and thus he had failed to demonstrate a clear possibility of torture upon his return to Angola. Because Mr. Catchai fails to articulate on appeal any reason why that ruling was erroneous, this argument, too, must fail. *See Ritonga v. Holder*, 633 F.3d 971, 979 (10th Cir. 2011).

### 4. Basis of Persecution

Mr. Catchai's final argument is that the BIA erred in assessing his asylum application as seeking protection from religious persecution rather than political persecution. True, the BIA did note that, according to Mr. Catchai's background materials, the Angolan government does not interfere with the country's churches or clergy. But the BIA referenced those materials as just one part of its assessment of the "totality of the circumstances and all relevant factors" supporting the IJ's adverse credibility finding, R. at 5 (internal quotation marks omitted), and elsewhere it correctly stated that Mr. Catchai feared persecution "on account of his anti-MPLA political opinion," *id.* at 3. Further, the BIA's citation to Angola's apparent respect for religion supports its conclusion that Mr. Catchai was not credible: if clergy in Angola are free from oppression in general, then they are likely free from oppression on the basis of both their religious *and* political views. Mr. Catchai's argument here, like his others, can afford him no relief.

## III.    CONCLUSION

For the foregoing reasons, we DENY Mr. Catchai's petition for review.  We

GRANT Mr. Catchai's motion for leave to proceed *in forma pauperis*.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge