**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MOISES EUFELIO MARTINEZ, JR.,

    Defendant - Appellant.

No. 19-2173
(D.C. Nos. 5:18-CV-00880-KG-SMV &
5:17-CR-01643-KG-1)
(D. N.M.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY[*]**
_____

Before **HARTZ**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Pro se[1] appellant-defendant Moises Eufelio Martinez, Jr. seeks a certificate of

appealability (COA) to appeal the district court's denial of his 28 U.S.C. § 2255

petition in which he claimed that his trial counsel was ineffective for not objecting to

various sentence enhancements. Exercising jurisdiction under 28 U.S.C §§ 1291 and

2253(c), we deny Martinez's application for a COA and dismiss his appeal.

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Martinez is proceeding pro se, we liberally construe his filings. *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009). That said, liberally construing a pro se filing does not include supplying additional factual allegations or constructing a legal theory on the appellant's behalf. *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

I.

In February 2016, police executed a search warrant for Martinez's recreational vehicle ("RV") in Hobbs, New Mexico, and found 270.5 grams of a substance testing positive for methamphetamine, along with two digital scales and two firearms. Then, on December 19, 2016, the police used a confidential source to contact Martinez and arrange a sale of methamphetamine valued at $600. Martinez informed the confidential source that he was staying at the Black Gold Casino hotel and agreed to conduct the exchange at a Walmart parking lot.

Police drove to the hotel, observed Martinez get into his car in the hotel driveway, then followed him to the Walmart parking lot. There, after Martinez attempted to complete the sale of drugs to the confidential source, the police detained Martinez and found 67 grams of methamphetamine, a .22 caliber pistol, two keys for Room 522 at the Black Gold Casino hotel, and hotel breakfast vouchers on his person. The police then obtained and executed a search warrant for Room 522 at the hotel, where they found another 564 grams of methamphetamine. Shortly thereafter, police charged Martinez with possession with an intent to distribute at least 50 grams of methamphetamine under 21 U.S.C. § 841(a)(1), (b)(1)(B) and aiding and abetting under 18 U.S.C. § 2.

Martinez pleaded guilty to his charges. In his plea agreement with the Government, Martinez admitted only to the facts related to his arrest in the Walmart parking lot; specifically, that the police discovered he possessed two bags of methamphetamine and a firearm. He agreed that the court, when determining his sentence, could rely on the facts that he stipulated to "as well as facts in the presentence

2

report." ROA at 170. Through the same Plea Agreement, the Government agreed not to charge Martinez based on any of the facts arising from the execution of the February 2016 search warrant of Martinez's RV or the December 2016 search warrant of the hotel room. But the Government "reserve[d] the right" to provide the United States Probation Office (USPO) and the court with a presentence report including any "relevant conduct" or "helpful" information. ROA at 169. Martinez acknowledged that the statutorily-prescribed sentence range for his crime was between five and forty years' imprisonment.

After Martinez pleaded guilty, the USPO prepared a Presentence Report (PSR) indicating that Martinez had possessed a total of 901.5 grams of methamphetamine including the 270.5 grams found in his RV, the 67 grams found on his person, and the 564 grams found in the hotel room. Based on the 901.5 grams of methamphetamine, the PSR assigned Martinez a base offense level of 30. It then recommended a two-level enhancement to his offense-level because Martinez possessed a firearm, and another two-level enhancement because Martinez maintained a place—his RV—for the purpose of distributing narcotics. Because Martinez accepted responsibility for his actions, the PSR allowed him a three-level reduction of his offense level. With these enhancements and reduction, the PSR calculated Martinez's total offense level at 31, which yielded a Guidelines range of 135–168 months' imprisonment.

Martinez moved for a two-level reduction on the ground that he played only a "minor role" as a broker between a woman who allegedly brought him the drugs in Room 522 and the buyer in the Walmart parking lot. The district court granted Martinez's motion and assigned him an offense level of 29. From the resulting Guidelines range of

3

108–135 months' imprisonment, the court ultimately imposed a sentence of 108 months in prison.

In September 2018, Martinez motioned for habeas relief under 28 U.S.C. § 2255, challenging his 108-month prison sentence. He claimed that his trial counsel was ineffective during sentencing in two ways. First, Martinez contended that his counsel should have objected to the PSR's offense-level enhancement based on Martinez's use of his RV "for the purpose of" distributing drugs. According to Martinez, the RV was his home, and thus its purpose was not solely to facilitate Martinez's drug operation, but also to provide Martinez a place to live in.

Separately, Martinez claimed that his counsel should have objected to the PSR's base offense-level calculation of 30 because it considered the 564 grams of methamphetamine in the hotel room. Martinez argued that the report should not have attributed the 564 grams of methamphetamine to him because the Government did not prove he possessed it. To the contrary, Martinez alleged, a woman named Anita or Annette "had drugs she needed to sell;" so she "g[ot] [Martinez and his friend, Tommy] a room at [the] hotel," brought the drugs, and stayed in the room with Tommy while Martinez went to the Walmart parking lot to sell the 67 grams of methamphetamine to the confidential source. ROA at 192.

Adopting the recommendation of a magistrate judge, the district court denied Martinez's § 2255 motion on the ground that his underlying ineffective assistance of

4

counsel (IAC) claim failed to satisfy the prejudice prong of the *Strickland* test.[2]  The trial counsel's failure to object to the RV and hotel room enhancements did not prejudice Martinez, the magistrate judge reasoned, because the sentencing judge would have denied such objections had they been made in the first place.  After denying Martinez's § 2255 motion, the district court sua sponte denied him a COA.

Martinez now seeks a COA from this court.

## II.

To obtain a COA, Martinez must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c).  This would require Martinez to demonstrate that "reasonable jurists" would find the district court's resolution of his IAC claims to be "debatable or wrong."  *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

To successfully raise an IAC claim, Martinez is required to show that his counsel's failures to object to the sentence enhancements were (1) so unprofessional that they deprived Martinez of "reasonably effective assistance," and (2) "prejudicial" in that there was a "reasonable probability" that Martinez would have received a lower sentence if his counsel made the objections.  *Strickland v. Washington*, 466 U.S. 668, 694 (1980).  Courts can dispose of IAC claims on the prejudice prong alone, without needing to decide if the counsel's performance was even deficient.  *Id*. at 697.

---

[2] The Supreme Court in *Strickland v. Washington* mandated that an IAC claim had to pass a two-prong test.  466 U.S. 668, 687 (1980).  First, the defendant must show that their counsel made an error; and second, the defendant must show that the error prejudiced the defense.  *Id*.

III.

We find that no reasonable jurist would debate the lower court's denial of Martinez's IAC claims. The failures of Martinez's counsel to object to the RV and hotel sentence enhancements were not prejudicial because such objections would have lacked merit and would have thus been rejected.

A.

Martinez first claims that his counsel was ineffective for not objecting to the sentence enhancement under U.S.S.G. § 2D1.1(b)(12) for "maintain[ing] a premises [his RV] for the purpose of manufacturing or distributing a controlled substance." He argues that the RV was his home and therefore its sole purpose was not drug related.

But sentence enhancements under § 2D1.1(b)(12) can apply to the defendant's place of residence if one of the "primary uses" of the premises was to manufacture, distribute, or store a controlled-substance. *Id*. at n.17. For example, in *United States v. Murphy*, our court affirmed the lower court's sentence enhancement under § 2D1.1(b)(12) where the premises at issue was also the defendant's home. 901 F.3d 1185, 1187 (10th Cir. 2018). We found that the residence had a "primary use" of facilitating the defendant's drug operation because the defendant stored or distributed methamphetamine there on at least four occasions and kept digital scales and a firearm on the premises. *Id*. at 1194–95.

Here, the § 2D1.1 sentence enhancement would have applied to Martinez even if his counsel raised an objection. The RV had a "primary use" of facilitating a drug operation because Martinez, like the defendant in *Murphy*, used his RV to

6

store a significant quantity of methamphetamine, digital scales, and firearms.
Accordingly, any objection to the § 2D1.1 sentence enhancement would have failed for a lack of merit. No reasonable jurist therefore would have found that Martinez was prejudiced by his trial counsel's lack of objection here.

B.

Martinez also claims that his counsel was ineffective for failing to argue that the 564 grams of methamphetamine should not have been attributed to him for sentencing purposes. He cites the Supreme Court's opinion in *Alleyne v. United States* to suggest that any fact that "increase[s] the range of punishment" must be proven beyond a reasonable doubt. *See* Aplt. Br. at 4 (quoting *Alleyne v. United States*, 570 U.S. 99, 115 (2013)). He suggests that the Government did not prove beyond a reasonable doubt that he possessed the 564 grams of methamphetamine seized in the hotel room, and that therefore the district court should not have used that amount to increase his offense level without first conducting an evidentiary hearing. *Id*. at 3–4.

It is true that facts influencing statutorily-imposed minimum and maximum sentences must be proven beyond a reasonable doubt. For example, the Supreme Court in *Alleyne* vacated the circuit court's affirmance of the district court's judgment because it imposed a mandatory minimum sentence based on a fact that the district court found through only a preponderance of the evidence, and not beyond a reasonable doubt. 570 U.S. at 117.

However, facts that merely influence a Guidelines range falling *within* the prescribed statutory range can be found by a preponderance of evidence. *See United*

7

*States v. Cassius*, 777 F.3d 1093, 1096 (10th Cir. 2015) (finding that the lower court did not err by "computing [a defendant's] Guidelines range using a crack cocaine amount the court found [only] by a preponderance of the evidence"). Here, the 564 grams of methamphetamine contributed to a Guidelines range of 135–168 months' imprisonment, which fell within the prescribed statutory range—five to forty years—for Martinez's crime. Therefore, Martinez's connection to the hotel room drugs need only be supported by a preponderance of the evidence.

Under the Guidelines, "the defendant is accountable for all quantities of contraband with which he was directly involved." U.S.S.G. § 1B1.3 n.3. An individual can be "directly involved" with a specific quantity of drugs even if he never possessed them. For example, in *United States v. Ruiz-Castro*, we found that the lower court did not err in attributing 227.5 grams of cocaine to the defendant for sentencing purposes, even though the defendant never gained possession of that amount. 92 F.3d 1519, 1538 (10th Cir. 1996). There, the defendant sought to purchase cocaine from another individual, who then transported and stored the cocaine at a third individual's house. *Id.* at 1525–26. Before the defendant ever visited the house or paid for the drugs, the police searched the house and seized 227.5 grams of cocaine. *Id.* at 1526. After the lower court attributed the entire 227.5 grams of cocaine to the defendant for sentencing purposes, the defendant appealed, arguing that he had no "direct connection with that amount." *Id.* at 1526, 1537.

This court in *Ruiz-Castro* agreed with the lower court and found that the defendant was "involved directly" with the entire amount of cocaine. *Id.* at 1538. We based our

8

finding on the facts that the defendant sought to purchase cocaine from one of the individuals at the house, that the home owner told a confidential source that "half of the cocaine brought to his residence was destined for [defendant]," and that the defendant called the residence on the day the cocaine was seized. *Id.*

Here, Martinez was also "directly involved" with the 564 grams of methamphetamine seized in the hotel room. First, the evidence suggests that Martinez personally possessed that entire amount and stored it in the room. He told the confidential source that he was staying at the hotel, he was seen by police leaving the hotel, and he was later found with hotel breakfast vouchers and two keys for the hotel room from where the drugs were eventually seized.

Even under Martinez's alternate version of the facts, the sentencing court would have still found that he was "directly involved" with the drugs in the hotel room. Martinez claims that the drugs were not his, but rather belonged to a woman who "g[ot] [Martinez and his friend] a room at a hotel" and brought them drugs. These facts are similar to those in *Ruiz-Castro* where we found that the defendant—who sought to purchase drugs from a seller, but never touched any of the drugs because they had been stored at a third-party's house—was directly involved with the entire amount of drugs seized. Similarly, Martinez indicated that he wanted to buy drugs from a seller—the woman—who brought the drugs to a specific location—the hotel room. And Martinez's involvement here is even more apparent than in *Ruiz-Castro* because Martinez had a direct connection to the hotel room—through both room keys—while the defendant in *Ruiz-Castro* did not.

9

Because the sentencing court would have found Martinez to have been directly involved with the drugs under either version of the facts, it would have sentenced Martinez accordingly regardless of whether his counsel objected to the enhancement. As such, no reasonable jurist would have found that Martinez was prejudiced by his counsel's decision not to object to his increased offense level based on the 564 grams of methamphetamine seized in the hotel room.

IV.

Because no reasonable jurist would have found that Martinez's IAC claims satisfied the prejudice prong of the *Strickland* test, Martinez fails to substantially show that he was denied a constitutional right. We therefore deny Martinez's application for a COA.

Entered for the Court

Allison H. Eid
Circuit Judge