**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FREDERICK RIDEOUT GRAY, JR.,

    Plaintiff – Appellant,

v.

TIFFANY ADE; CAPTAIN
HATCHMAN; SERGEANT WRIGHT; A.
W. PEREZ; TERRY UNDERWOOD;
MAJOR BROWN; MAJOR DORMAN; A.
W. GENTRY; JAMES YATES; OFFICER
GARRISON,

    Defendants – Appellees.

No. 19-7059
(D.C. No. 6:17-CV-00356-RAW-SPS)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **MATHESON**, and **EID**, Circuit Judges.
_____

Appellant Frederick Gray is an inmate held by the Oklahoma Department of

Corrections ("ODOC"). He filed this *pro se* 42 U.S.C. § 1983 action against multiple

prison officials who allegedly violated his constitutional rights while he was incarcerated

at Davis Correctional Facility ("DCF"), a private prison in Holdenville, Oklahoma. The

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court dismissed all but two of Gray's claims for failure to exhaust the ODOC's grievance process as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). For Gray's surviving Eighth Amendment claim, the district court found no factual or legal basis for this argument. As to his remaining property allegation, the district court concluded Gray had failed to establish a proper claim. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

Because the parties are familiar with the facts of this case, we offer details only in connection with our disposition of the issues presented in this appeal. Gray arrived at DCF from the Lawton Correctional Facility in Lawton, Oklahoma on May 30, 2017. Upon intake, prison officials placed Gray with a cellmate, Ezekiel Davis, who had also been recently transferred. Within weeks of his arrival to DCF, Gray alleges Davis began verbally and physically abusing him. This harm, at the hands of Davis, re-aggravated some of Gray's past injuries and resulted in new ailments.

Fearful of Davis, Gray alerted prison officials to his cellmate's behavior. As a result, officials separated the two inmates by transferring Gray to a special housing unit ("SHU"). During the course of this move, Gray alleges prison officials lost some of his property. And despite filing missing property claims, Gray contends he only received some of his property.

Over the course of the time relevant to this matter, Gray filed 18 grievances regarding an array of issues including allegations of insufficient medical attention, problems with different roommates, and property concerns. Despite his placement on a

2

one-year grievance restriction—which predated his arrival to DCF—Gray brought these grievances. While this label does not preclude Gray from filing additional grievances, it requires him to undergo a slightly different process to submit a grievance. *See* ROA Vol. III at 63–64.

Gray ultimately sought relief for several alleged constitutional violations during his time at DCF. After filing a *Martinez* report at the direction of the district court, the defendants moved for summary judgment, which the district court granted. Gray now appeals.

## II.

Gray raises three main arguments: (1) prison officials caused any defects in his failure to exhaust the requisite administrative remedies; (2) the defendants failed to adequately protect him; and (3) the defendants deprived him of a constitutionally protected property interest. Construing Gray's *pro se* complaint with due generosity, *see United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (citation omitted), we affirm the district court's grant of summary judgment.

### A. Exhaustion of Administrative Remedies

"We review a district court's grant of summary judgment de novo, applying the same standard as the district court." *Helms v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011) (citation omitted). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim

internally and by abiding "with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Critically, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (internal quotation marks and citation omitted).

The administrative grievance process for Oklahoma inmates is well documented.[1] With this framework in mind, we review the dismissal of Gray's claims.[2] His first argument is that prison officials "prevented, thwarted, hindered, frustrated, and hampered [him] from availing himself in the grievance process." Aplt. Br. at 3(f). As for specifics, Gray alleges that "Defendants Underwood and Yates created excessive procedural technicalities . . . to manipulate the process" thereby "constraining him" from completing the process. *Id.* at 3(d). And so Gray argues summary judgment was inappropriate because he substantially complied with the "available" remedies. *See Id.* at 3.

---

[1] DCF utilizes the ODOC four-step process for administrative exhaustion of inmate claims. Initially, an inmate must seek to resolve any complaint by informally raising the matter with an appropriate staff member within three days of the incident. *See* ROA Vol. III at 52. If the matter is not resolved, the inmate must submit a Request to Staff ("RTS"). *Id.* at 53. If the matter still remains unresolved, the inmate may file an "Inmate/Offender Grievance Form" ("grievance") with the appropriate reviewing authority. *Id.* at 54. After receiving a response to one's formal grievance, the inmate may appeal that decision to the Administrative Review Authority ("ARA") or to the Medical Administrative Review Authority. *Id.* at 58. Only upon proper completion of all four steps has the inmate exhausted administrative remedies. *See Little*, 607 F.3d at 1249.

[2] Gray states that "[t]his case only deals with [the] necessity to exhaust five of the numerous grievances" he filed, *see* Aplt. Br. at 3, but he fails to specify which grievances are at issue. Accordingly, we review all of the grievances discussed by the district court and defendants.

4

The record, however, shows otherwise. Though Gray began the grievance process for his claims, he largely failed to correct cited procedural defects in his grievance forms. In fact, the same defect impacted many of Gray's grievances. Because Gray was placed on a one-year grievance restriction as of April 10, 2017, which *predated* his May 31, 2017 arrival to DCF, *see* ROA Vol. III at 41, he needed to comply with additional requirements in order to submit a grievance. The applicable ODOC policy states that an offender on grievance restriction must:

> "submit a duly verified affidavit . . . attached to the grievance . . . contain[ing] a complete, accurate and legible list . . . of all grievances previously submitted by the inmate/offender within the last 12 months [and] [e]ach page of the affidavit must be legible and signed, verified, and notarized at the end of the text."

*Id.* at 63–64. Along with other procedural errors, many of Gray's grievances failed to fully comply with the submission process for those on a grievance restriction.

All five of the grievances Gray filed on June 7, 2017 suffered from multiple procedural defects including a failure to include the proper documentation. As such, these grievances—Grievances 17-139, 17-140, 17-141, 17-142, and 17-143—were returned unanswered to him on June 9, 2017. *See id.* at 41–42 (affidavit from DCF Grievance Coordinator Terry Underwood noting different procedural defects); *see, e.g.*, *id.* at 70 (Grievance 17-139 returned unanswered due to failure to include notarized affidavit); *id.* at 75 (Grievance 17-140 returned unanswered for similar reasons).

Gray's later grievances continued to deviate from the required procedures. For example, officials received Grievance 17-160 on June 27, 2017. Two days later, it was returned unanswered for several reasons—including that the attached "Request to Staff"

5

("RTS") form was never answered. *Id.* at 103, 107. In accordance with ODOC regulations, Gray was permitted to resubmit. *See id.* at 104. But he needed to refile "within 10 days of notice of improper filing." *Id.* at 55. Yet Gray was untimely in his resubmission—refiling Grievance 17-160 over ten days late on July 17, 2017. *Id.* at 151.

The four grievances he filed on July 19, 2017 contained similar procedural defects. His Grievance 17-187 was returned unanswered for attaching an "incorrect" affidavit. *Id.* at 172. Once notified of this deficiency, Gray could have resubmitted a proper grievance and affidavit within 10 days of this notice of improper filing. *Id.* He failed to do so. Among other issues, Grievances 17-188 and 17-189 were both untimely. *Id.* at 190, 194, 210, 214. And Grievance 17-190 requested a transfer to another facility—an issue that fell outside the scope of what could be grieved. *Id.* at 52, 231.

Then on September 1, 2017, officials received two grievances Gray characterized as "Sensitive." Grievance 17-222 was returned unanswered, because he once again improperly utilized this process to request a transfer to another facility. *Id.* at 268, 270. The reviewing official also determined this grievance did not qualify as sensitive. *Id.* at 269.[3] Furthermore, Gray was indeed seen by a mental healthcare provider on August 16 and August 21, which addressed the complaint raised in this grievance. *Id.* at 272. Grievance 17-223 was returned unanswered for a number of reasons. *Id.* at 273–74. Despite being afforded an opportunity to refile, *id.* at 274, Gray did not do so.

---

[3] Gray could have appealed this decision, but he failed to avail himself of this option. *See* ROA Vol. III at 62 ("The inmate/offender may appeal that response [about whether this grievance is in fact an emergency or sensitive grievance] . . . .").

Between September 12 and September 25, 2017, Gray filed four additional grievances—but all were out of compliance. Grievance 17-233 was returned unanswered, because it concerned a non-grievable issue: property issues at a privately contracted facility.[4] *Id.* at 50, 278. Grievance 17-234 contained multiple issues, including an impermissible request for transfer to another facility. *Id.* at 282. Among other issues, Grievance 17-236 failed to list a *specific* date of incident. *Id.* at 285. Finally, Grievance 17-244 contained an untimely RTS. *Id.* at 292.

Gray's contention that prison officials "thwarted" or "prevented" him from exhausting the applicable administrative remedies finds no support in the record. Instead, numerous defects—of his own doing—accompanied many of his grievances. Whether it was failing to attach a properly completed affidavit with his grievances or submitting documents in an untimely fashion, we find these errors stem from Gray's own failure to adhere to the requirements of the grievance process. In fact, Gray knew how to navigate the process, as he properly exhausted Grievance 17-147, *see id.* at 97, and Grievance 17-201, *see id.* at 265.

Nor can we accept Gray's alternative argument—that the defendants instituted excessive procedural technicalities as a means to prevent him from exhausting the administrative remedies. That there are multiple procedural steps Gray must comply with to properly exhaust the process does not excuse an inmate's failure to abide by the rules. "Exhaustion gives an agency an opportunity to correct its own mistakes with respect to

---

[4] We consider the merits of Gray's property claim in Section II of this decision.

7

the programs it administers before it is haled into federal court." *Woodford*, 548 U.S. at 89 (internal quotation marks and citation omitted).

Given these facts, the district court did not err in finding that Gray failed to properly exhaust 16 of the 18 grievances he filed during the timeframe relevant for this case.[5] And because no unexhausted claim can be considered by a court, *Thomas*, 609 F.3d at 1117, Gray's challenges to the claims associated with these 16 grievances must, out of necessity, also fail.

## B. Failure to Protect Claim

As Gray properly exhausted Grievances 17-147 and 17-201, we now consider his claim that defendants "failed to protect" him from harm inflicted by his cellmates, a violation of his Eighth Amendment rights. Reply Br. at 12. He asserts that housing unit manager Tiffany Ade failed to properly classify him as a vulnerable inmate and thus neglected to place him in "an appropriate per se safe" living arrangement. *Id.* at 13 (internal quotation marks omitted).

The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement—to include "reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). "This duty includes 'a duty to protect prisoners from violence at the hands of other prisoners.'" *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (quoting *Farmer*, 511 U.S. at 833). For Gray to prevail, he must show that there has been

---

[5] We consider the claims originating from the properly exhausted Grievances 17-147 and 17-201 in the remainder of this decision.

"deliberate indifference" to his safety needs. To establish "deliberate indifference," Gray must show the alleged mistreatment was "objectively" serious and that the defendants "subjectively" ignored his safety needs. *Farmer*, 511 U.S. at 829, 834. A claimant may satisfy the subjective prong of this inquiry by establishing that "the official knows of and disregards an excessive risk to inmate health or safety," which is to say "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

As the district court found, the evidence does not support an inference that the defendants were deliberately indifferent. We need not address the objective component of Gray's claim, because his claim clearly fails on the subjective prong. Indeed, our review of the record shows that prison officials acted on Gray's properly exhausted grievances. In Grievance 17-147, Gray complained about his cellmate, Ezekiel Davis, and requested to be separated from him. ROA Vol. III at 101. After an investigation into this matter by the housing unit manager, Ade, Gray was moved from his cell within days of submitting the grievance. *Id.* at 100. Further, Gray admits that before his initial assignment with Davis, he apparently saw no issues. *See id.* at 102 ("If [I] knew Mr. Davis better I would have known better than to accept him as a cellmate."). And then in Grievance 17-201, Gray expressed fear of his cellmate Tony Martin. *Id.* at 266. On the very day officials received this grievance, they granted Gray's request to be moved. *Id.* at 265.

Gray also claims he was improperly classified. Nonetheless, "[u]nsubstantiated allegations carry no probative weight in summary judgment

9

proceedings." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (internal quotation marks and citations omitted). And Gray's assertion stands in conflict with the record. In a sworn affidavit, housing unit manager Ade revealed that upon initial transfer to DCF, Gray and Davis actually "asked me that they be celled together." ROA Vol. III at 306–07. Despite this request, Ade conducted an initial classification review of these two inmates. The records "indicated that Mr. Gray was listed as both a victim and a predator." *Id.* at 307. For that reason, Ade sought to ensure Gray was not placed with another inmate identified as a potential predator. Because Davis was not classified as a "predator," Ade observes she had no concerns with housing the two inmates together. *Id.* After about two weeks as cellmates, Gray filed an emergency grievance claiming "his life was in danger because of his cellmate, Ezekiel Davis." *Id.* Despite no prior indications of danger and no signs of injury, Ade approved Gray's move to another housing unit. *Id.* Once again, Ade worked to find a "suitable housing situation" for Gray, and he eventually accepted a new cellmate. *Id.* at 308. Before long, Gray filed a grievance concerning his new cellmate. "[A]s soon as [she] was alerted of [an] issue," Ade moved Gray to another cell on that very day. *Id.*

We agree with the district court that Gray did not create a genuine issue of material fact as to whether the defendants knew about and failed to protect Gray from an excessive risk to his safety. The evidence indicates Gray was moved, almost immediately, and he was not forced to remain with allegedly abusive cellmates in

10

both instances when he filed properly exhausted grievances. Gray claims the defendants were deliberately indifferent to his safety, but the record counsels otherwise.[6]

### C. Personal Property Claim

In Gray's third argument, he claims that during his move to the Fox Bravo unit within DCF, defendants Hatchman and Wright separated him from his property before it could be fully secured. *See* Aplt. Br. at 3(k), Reply Br. at 6. In so doing, Gray claims the officials acted "without any due process" and that they ultimately lost or damaged his property. Aplt. Br. at 3(k)–3(l).

In *Daniels v. Williams*, the Supreme Court held "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." 474 U.S. 327, 328 (1986). Gray does not assert an intentional loss or destruction of his property. Instead, he essentially claims the defendants acted negligently. *See, e.g.*, ROA Vol. IV at 74 ("[T]hey denied his right and refused to allow Plaintiff Gray to pack his own personal property, subsequently, it was not properly secured or stored."). As such, we find his allegations fall short of supporting a due

---

[6] Gray also briefly alleges that officials retaliated against him for submitting these grievances. *See* Aplt. Br. at 3b. But in an affidavit, Ade states that at times, Gray "refused to comply with housing assignments." ROA Vol. III at 308. As such, he received write-ups for this failure to move to an assigned cell. Though Gray perceived retaliatory intent behind this discipline, Ade states that "[n]one of the misconduct write-ups were issued to him in retaliation for anything. Mr. Gray repeatedly refused to comply with direct orders associated with cell assignments and cellmates. There are consequences for refusing orders and housing assignments." *Id.* Accordingly, the district court properly disposed of this claim.

11

process claim.[7]  Finally, we note that the two personal property claim forms at issue both indicate all of Gray's items were returned.  *See* ROA Vol. III at 299, 301.  Gray even signed each form—acknowledging their return.  *Id.*  In short, we agree with the district court that the defendants are entitled to summary judgment as to this property deprivation claim.

### III.

For substantially the same reasons set forth in the district court's order issued on September 30, 2019, we **AFFIRM** the district court's grant of summary judgment to the defendants.  Gray is reminded that he is obligated to continue making partial payments until the entire fee is paid.

Entered for the Court

Allison H. Eid
Circuit Judge

---

[7] Even if the conduct had been intentional, there is no due process violation if there is an adequate alternative state remedy, *e.g.*, a state law conversion claim, for the loss of property.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Here, the Oklahoma Governmental Tort Claims Act provides a remedy for unlawful deprivation of property and Gray has not explained why this remedy was unavailable or inadequate.  *See Dopp v. Loring*, 245 F. Appx 842, 849 (10th Cir. 2007) (unpublished) (acknowledging this same state post-deprivation remedy was available for an Oklahoma inmate raising similar property concerns).